THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RONALD R. ROSS, Defendant-Appellee.

Second District    No. 83—947

Opinion filed May 7, 1985.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner and Diana Fischer-Woods, Assistant State's Attorneys, and Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

William F. Linkul and Carl W. Kuhn, both of Glen Ellyn, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

The State brings this interlocutory appeal (87 Ill. 2d R. 604(a)(1)) from the trial court's order granting the motion to suppress evidence of defendant, Ronald R. Ross.

The State presents two issues for review: (1) whether the trial court's ruling in granting the motion to suppress evidence recovered in a warrantless search of the defendant's person was manifestly erroneous considering the totality of the circumstances; and (2) whether a good-faith exception to the exclusionary rule exists here even if the police officers were mistaken in their assessment of probable cause to search the defendant without a warrant.

Following his arrest for unlawful possession of less than 30 grams of a controlled substance containing cocaine (Ill. Rev. Stat. 1983, ch. 56½, par. 1402(b)), defendant filed a motion to suppress the controlled substance taken from his person, alleging it was seized during a search conducted without a warrant, not incident to a lawful arrest, and not based upon reasonable grounds. At a hearing on the motion to suppress, the following relevant testimony was adduced.

Defendant testified that at approximately 10:30 p.m. on April 29, 1983, he was attending a wedding reception at the Diplomat West in Elmhurst when a man approached and asked defendant to accompany him to the office. Upon reaching the office, he was confronted by several police officers who shut the door and informed him that they received an anonymous telephone call that defendant was dealing in cocaine at the wedding reception. They asked if he would mind if they searched him, and defendant said he replied yes, he would mind, "but you are going to do it anyway." Two officers searched him and recovered cocaine from his person.

Joseph McKeever, a police dispatcher for Du Page Public Safety Communications (DuComm), testified that at approximately 10 p.m. on April 29, 1983, he received an overflow call from Elmhurst. A man who refused to identify himself told McKeever that a person was selling cocaine at the Diplomat West in Elmhurst. He gave McKeever defendant's name and description, a description of defendant's car and license plate number, and said defendant would get the cocaine from his car, put it in his jacket pockets, and sell it in the reception

area of the Diplomat West. He also told McKeever of a second person, Dean Schmidt, who was with defendant and also selling cocaine. The caller said he was unable to see if money was being transferred during the several transactions he saw, but said he knew it was cocaine that was being handed to another, although he did not describe how. McKeever relayed this information to the Elmhurst dispatcher, and later to Officer Turek of the Elmhurst police department.

Officer Turek testified that at about 10:10 p.m. he spoke by telephone with McKeever and received the information McKeever was given by the anonymous caller. In addition to the information to which McKeever testified, Turek stated that McKeever told him that the caller said defendant was the main person and Schmidt was making sales from the quantity of cocaine in defendant's possession. Turek and another officer then drove to the Diplomat West, located defendant's car, entered the Diplomat West, determined that a wedding reception was being held and, after a detective arrived at about 10:30 p.m., reentered the Diplomat West and went to the manager's office. The officers told the manager to find defendant and bring him to the office. Defendant, whom Turek knew, was brought to the office, where the officers explained the information they had received, and told defendant they would like to search him. At that time, the detective began patting defendant's coat pockets and found a Sucrets box containing a white folded piece of paper in defendant's sport coat pocket. Turek also testified that he had once arrested defendant for possession of cannabis, and some five months prior to April 29, 1983, had conducted a cocaine-related investigation involving defendant. Turek stated the reception was to end at midnight and he would have been unable to secure a search warrant before midnight. He felt there was some corroboration of the caller's information and a search was justified under the circumstances. Turek stated he was not told by McKeever that defendant was obtaining the cocaine from his car.

The trial court found that although the police officers acted in good faith, they did not under the totality of the circumstances have probable cause to justify a warrantless search. The motion to suppress was granted, the State filed a certificate of impairment, and this interlocutory appeal ensued.

■■■ Essentially, the State's position is that under the totality of the circumstances the decision of the officers to conduct a warrantless search of defendant was justified based upon their reasonable belief that "it was probable that evidence of a crime would be found on defendant," and exigent circumstances made it impractical to secure a warrant. The State contends that the test for probable cause to

search without a search warrant is the same as that enunciated in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, for probable cause for a magistrate to issue a search warrant. Additionally, the State argues that while a search without a search warrant is unreasonable *per se*, a search without a warrant based upon probable cause where there are exigent circumstances which make it impractical to obtain a warrant is an exception to the general rule of unreasonableness.

Initially, we must point out what is not in issue in this case. The State does not argue that defendant consented to the search of his person (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041), nor do the facts support such a conclusion. The State further does not contend that this is a proper search incident to an arrest, as is evident from the record, for defendant's arrest clearly followed the search, and the fruits of the search thus support and were the basis of probable cause to arrest. See *Rawlings v. Kentucky* (1980), 448 U.S. 98, 111 n.6, 65 L. Ed. 2d 633, 646 n.6, 100 S. Ct. 2556, 2564 n.6; *Sibron v. New York* (1968), 392 U.S. 40, 63, 20 L. Ed. 2d 917, 934-35, 88 S. Ct. 1889, 1902-03.

Warrantless searches are *per se* unreasonable under the fourth amendment to the United States Constitution—subject to a few recognized exceptions to this general rule—notwithstanding facts unquestionably showing probable cause, for the Constitution requires that the deliberate, impartial judgment of a judicial officer be interposed between the citizen and the police. (*United States v. Karo* (1984), 468 U.S. 705, 717-18, 82 L. Ed. 2d 530, 542-43, 104 S. Ct. 3296, 3304-05; *Katz v. United States* (1967), 389 U.S. 347, 356-57, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514.) Those suspected of drug offenses are no less entitled to that protection than those suspected of non-drug offenses. (468 U.S. 705, 717-18, 82 L. Ed. 2d 530, 543, 104 S. Ct. 3296, 3305.) Professor LaFave writes that in the more unusual case of a warrantless search without an arrest, as is the case here, "it is appropriate to apply on a case-by-case basis the warrantless *search* (not arrest) test of Chambers v. Maroney: probable cause that evidence will be found in the search plus exigent circumstances." (2 W. LaFave, Search and Seizure sec. 5.4(b), at 345 (1978).) Thus, even if there are exigent circumstances (see, *e.g.*, *Warden v. Hayden* (1967), 387 U.S. 294, 298, 18 L. Ed. 2d 782, 787, 87 S. Ct. 1642, 1645-46; *People v. Free* (1983), 94 Ill. 2d 378, 395, 447 N.E.2d 218), or emergency circumstances (see, *e.g.*, *Schmerber v. California* (1966), 384 U.S. 757, 770-71, 16 L. Ed. 2d 908, 919-20, 86 S. Ct. 1826, 1835-36), which under the particular facts of a case may be a limited exception to the warrant require-

ment, the threshold inquiry in analyzing any such exception is whether there was probable cause to believe that the search will reveal evidence or fruits of a crime, or contraband. *Cf. Ybarra v. Illinois* (1979), 444 U.S. 85, 90-92, 62 L. Ed. 2d 238, 245-46, 100 S. Ct. 338, 341-43.

■ When a police officer has proceeded without a warrant to search, seize evidence, or arrest a person, our supreme court stated in *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147, that "the trial court making a probable-cause determination is to apply standards at least as stringent as those that guide a magistrate in deciding whether to issue a warrant." (103 Ill. 2d 226, 236, 469 N.E.2d 147.) Although *Tisler* involved probable cause to make a warrantless arrest based upon an informant's statements plus police corroboration, the court applied the standard in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, for resolving probable-cause questions under the Illinois Constitution that involve an informant's tip. We believe the same test is applicable in determining probable cause to search without a warrant under the circumstances present here, where the warrantless search resulted from an informant's tip. See 103 Ill. 2d 226, 245-46, 469 N.E.2d 147.

■ Under the *Gates* "totality of the circumstances" approach, probable cause based upon an anonymous informant's tip is determined by whether, after examining all the circumstances, including the "veracity" and "basis of knowledge" of persons supplying the hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates* (1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.

Prior to the United States Supreme Court's decision in *Gates*, courts mechanically applied the "two-prong" test for probable cause under *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584. Under the *Aguilar-Spinelli* two-prong approach, the information provided by an informant was required to include facts relating to both the informant's "basis of knowledge" and the "veracity" or "reliability" of the tip.

While the Supreme Court in *Gates* rejected the rigid and mechanical application of the two-prong *Aguilar-Spinelli* test, it decided that "an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his reports" and that these factors should be examined as relevant considerations in the totality of the circumstances analysis. (*Illinois v. Gates* (1983), 462 U.S.

213, 230-34, 76 L. Ed. 2d 527, 543-45, 103 S. Ct. 2317, 2328-30.) In examining these relevant considerations under the totality of the circumstances approach, a deficiency with respect to one of the *Aguilar-Spinelli* requirements can be overcome "by a strong showing as to the other, or by some other indicia of reliability." (462 U.S. 213, 233, 76 L. Ed. 2d 527, 545, 103 S. Ct. 2317, 2329.) Moreover, the Supreme Court particularly emphasized the value of independent police investigation that corroborates the details of an informant's story. 462 U.S. 213, 241-45, 76 L. Ed. 2d 527, 550-52, 103 S. Ct. 2317, 2334-35.

■ Turning to the facts of the instant case, we find, after our examination of the relevant considerations noted above, that under the totality of the circumstances, probable cause for a warrantless search of defendant did not exist. Initially, we note that the record does not contain any evidence that the information provided by the anonymous informant was "reliable," as he remained unidentified and it does not appear that he had provided any reliable information to the officers in the past. Furthermore, his "basis of knowledge" was not particularly strong. Although the informant apparently witnessed what he thought to be cocaine sales by defendant, there is no information indicating how he knew the substance being transferred was, in fact, cocaine, nor did he see money exchanged. These deficiencies, however, would not necessarily render the informant's tip untrustworthy in the presence of strong corroborative circumstances established through independent police investigation.

Our supreme court, in relying on Justice White's concurring opinion in *Illinois v. Gates*, has stated that it is irrelevant whether the corroborative events observed by the police are innocent or incriminating. "Instead, the proper focus is 'whether the actions of the suspects, whatever their nature, give rise to an inference that the informant is credible and that he obtained his information in a reliable manner.'" *People v. Tisler* (1984), 103 Ill. 2d 226, 251, 469 N.E.2d 147, citing *Illinois v. Gates* (1983), 462 U.S. 213, 269, 76 L. Ed. 2d 527, 568, 103 S. Ct. 2317, 2348 (White, J., concurring).

While it appears that Officer Turek did engage in some independent corroboration of the anonymous tip, we do not find it sufficiently strong enough to overcome the deficiencies in the other relevant considerations under our "totality of the circumstances" analysis. Upon arriving at the Diplomat West, Officer Turek located defendant's car and determined that a wedding reception was being held. This amounted to the only independent corroboration by the officer. He did not see defendant going to and from his car, nor did he see defendant engaging in any drug transaction or other activity within the building

corroborative of what the informant had stated. Instead, the officer located a manager and had him bring defendant to an office where he proceeded to search defendant after having only independently established that defendant's car was in the parking lot and defendant was attending a wedding reception on the premises. Although Officer Turek stated that five months earlier he had conducted a cocaine-related investigation involving the defendant, no details of this investigation were given by Turek indicating a significant, similar pattern which might corroborate the informer's tip. See *People v. Gacy* (1984), 103 Ill. 2d 1, 23, 468 N.E.2d 1171.

■ We find that this weak corroboration of seemingly innocent events in the present case distinguishes it from the somewhat analogous situations occurring in *Draper v. United States* (1959), 358 U.S. 307, 313, 3 L. Ed. 2d 327, 332, 79 S. Ct. 329, 333, and in *People v. Tisler* (1984), 103 Ill. 2d 226, 250, 469 N.E.2d 147, where virtually every detail of the informant's tips was confirmed through independent corroborative investigations by the police prior to the arrests. We further observe that the great deference to a judge's determination of probable cause by the reviewing court because of the strong preference for searches conducted pursuant to a warrant (see *Illinois v. Gates* (1983), 462 U.S. 213, 235-36, 76 L. Ed. 2d 527, 546-47, 103 S. Ct. 2317, 2330-31) is not present here where the search was without a warrant.

■ A reviewing court will not disturb the circuit court's finding on a motion to suppress unless that finding is determined to be manifestly erroneous. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766.) In view of the insufficient showing of the informant's "basis of knowledge" or the "reliability" of his information and the minimal independent corroboration of the anonymous tip, we conclude that under the totality of the circumstances in the present case, probable cause for a warrantless search of defendant did not exist. On this record we cannot say the trial court's decision to suppress was manifestly erroneous.

■ The State further maintains that even if the officers were mistaken in their belief that probable cause existed for the search of defendant without a warrant, the exclusionary rule should not be applied to suppress the evidence because the officers acted "reasonably and in good faith in determining probable cause existed."

In *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, the United States Supreme Court recognized a good-faith exception to the fourth amendment exclusionary rule so as not to bar the use in the prosecution's case in chief evidence obtained by

officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. This limited exception to the exclusionary rule, however, was expressly created for searches conducted pursuant to a warrant. Until the United States Supreme Court or our supreme court specifically recognizes such a good-faith exception in cases of searches without a warrant, we are bound to follow long-established precedent of decisions applying the fourth amendment exclusionary rule in unlawful searches without a warrant.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH, P.J., and UNVERZAGT, J., concur.