THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JEFFREY L. CREST, Defendant-Appellant.

Second District   No. 2—88—0493

Opinion filed September 25, 1989.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Robert Agostinelli and Verlin R. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, John X. Breslin, and William P. Gibbs, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:
Defendant, Jeffrey L. Crest, was found guilty, following a bench trial in the circuit court of Du Page County, of burglary (Ill. Rev. Stat. 1987, ch. 38, par. 19—1(a)) and was sentenced to an eight-year term of imprisonment.

Defendant raises two issues on appeal relating to the denial of his motion to quash his arrest and suppress evidence: (1) whether the police had articulable facts to justify a stop of the vehicle in which he was a passenger; and (2) whether the police had probable cause to arrest him after searching the trunk of the vehicle.

The facts relevant to deciding the issues raised on appeal were adduced at the hearing on defendant's motion to quash arrest and suppress evidence and at his trial. According to Marshall Gauer, a police

officer for the City of Aurora, he read a burglary report on September 1, 1987, which indicated that electrical wire had been reported stolen earlier that day from a construction trailer owned by Scheffler Electric Company and located near the intersection of Middlebury and 83d Streets in Aurora, Illinois. The report indicates that 30 boxes of No. 14 T.H.N.N. solid wire and one spool of No. 4 T.H.N.N solid wire were taken in the burglary. Later, during the early evening hours on September 1, 1987, Officer Gauer read a printed report of an anonymous telephone call received at the police station. According to the report, the caller indicated that Randy Crest and someone named "Sid" were trying to sell wire, a snowblower, and other stolen property stored in the basement of 60 South Spencer Street in Aurora to raise money to bond defendant, Jeffrey Crest, Randy's brother, out of jail. The typed summation of the telephone tip indicates that the caller had been contacted by Randy Crest and someone named "Sid" who wanted to sell some copper wire. The report states that the caller observed about 500 pounds of copper wire coated with black plastic.

On September 2, 1987, at about 9 to 9:30 a.m., Gauer received a telephone call from the anonymous informer, who told Gauer that the electrical wire was stored at the Crest home on Spencer Street and that it was going to be moved that day and sold to help get Jeff out of jail. At approximately 11:30 a.m., on September 2, Gauer received another call from the anonymous informer. The caller indicated that Jeff was out of jail and that the items would be moved from the Crest residence within the next couple of hours.

During his tour of duty on September 2, 1987, Gauer periodically monitored the Crest home, which he knew to be at 60 Spencer Street. On one such occasion, at about 2 p.m., Gauer observed an Oldsmobile backed into the driveway of the Crest residence with the trunk lid open and three males standing behind it. Gauer positioned his unmarked police car about 80 to 100 feet south of the Crest home on a cross street. From that position he recognized one of the males as defendant and one as Ronald Carty, both of whom he knew. He then observed the trio carrying several boxes approximately 15 to 18 inches square by 5 to 6 inches deep from the Crest home and placing them into the trunk of the Oldsmobile. Defendant carried one or two of the boxes. One of the boxes was open, and it had electrical wire protruding from it. The trio also placed a wooden stick with red wire wrapped around it and a white bucket into the trunk. All three males got into the Oldsmobile and, with a fourth person driving, left the Crest residence.

Gauer then radioed a marked squad car for assistance as he followed the Oldsmobile in his unmarked car. Gauer then requested the marked squad car to stop the Oldsmobile, which it did.

Gauer and Officer Danny Hornback of the Aurora police department approached the vehicle and ascertained that the driver was Brenda Goggins and that the front seat passenger was Ronald Carty. Defendant and Sidney Carty were seated in the rear of the Oldsmobile. It was subsequently learned that Goggins' driver's license was revoked.

Gauer then explained to Goggins that he had observed the three passengers placing wire that he believed was stolen in a burglary into the trunk. Gauer then advised Goggins of her right to refuse consent to a search of the trunk, and she indicated the vehicle belonged to her fiance. Goggins then told Gauer she would like to talk to Ronald Carty before deciding whether to consent to the search of the trunk.

Following her conversation with Ronald Carty, Goggins asked Gauer what would happen to the vehicle if she refused to consent to the search, and Gauer responded that he would tow and impound the vehicle and obtain a search warrant. Goggins responded that she did not want the car towed, that she would not go to jail for anyone, and that Gauer could search the trunk.

Gauer obtained the keys, but could not locate the trunk key on the key ring. Goggins then examined the key ring and indicated that one of the passengers in the Oldsmobile must have it. Defendant and Sidney Carty were then removed from the vehicle and told to empty their pockets on the trunk. The trunk key was not among the contents. Officer Hornback then observed that Ronald Carty's shoes were untied and, after requesting that he remove his shoes, the trunk key was discovered in one of Ronald Carty's shoes.

Upon opening the trunk, the officers discovered 10 boxes of T.H.N.N. No. 14 electrical wire, the same type taken in the burglary of the Scheffler Construction Company trailer. Defendant and the other two passengers were placed under arrest for possession of stolen property at that time. Defendant subsequently admitted his involvement in the burglary.

Defendant presented no witnesses at his trial.

Defendant contends on appeal that the initial stop of the Oldsmobile in which he was a passenger was unconstitutional because it was based on an uncorroborated, anonymous telephone tip. He further maintains that even if the subsequent search of the trunk was valid under the fourth amendment, the police did not have probable cause to arrest him after searching the trunk.

The State initially responds that defendant, as a passenger in the vehicle, lacked standing to challenge the constitutionality of the stop of the vehicle. Alternatively, the State, in arguing that the initial stop of the Oldsmobile was constitutional, maintains that the police had probable cause to arrest defendant based on the information known to them prior to the search of the trunk, or, at the very least, the police had articulable suspicion to stop the vehicle for investigatory purposes.

■ It is well established that a passenger of a vehicle has standing to challenge the stop of the vehicle. (*People v. LaGrone* (1984), 124 Ill. App. 3d 301, 302-03, 464 N.E.2d 712; *People v. Kunath* (1981), 99 Ill. App. 3d 201, 203-06, 425 N.E.2d 486; see also *People v. Manke* (1989), 181 Ill. App. 3d 374, 378-79, 537 N.E.2d 13.) Accordingly, defendant has standing to raise the constitutionality of the initial stop of the vehicle in this case.

■ The burden of proof, in a motion to suppress evidence, is on the defendant to establish that the search and seizure were unreasonable. (*People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898, 899.) A reviewing court will not reverse the trial court's finding on a motion to suppress evidence unless the finding is manifestly erroneous. *People v. Galvin* (1989), 127 Ill. 2d 153, 162, 535 N.E.2d 837.

Although the State argues on appeal that the police had probable cause to arrest defendant prior to stopping the vehicle, we need not reach that issue as we find that the police had articulable suspicion to stop the vehicle. Section 107—14 of the Code of Criminal Procedure of 1963 provides that a peace officer may stop a person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, has committed, or is about to commit an offense. (Ill. Rev. Stat. 1987, ch. 38, par. 107—14.) This statute codifies the principles established in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. *People v. Long* (1983), 99 Ill. 2d 219, 228, 457 N.E.2d 1252.

■ It must be noted that the necessary inquiry in any *Terry*-type situation is whether the police officer's conduct was reasonable under the circumstances known to the officer at the time he initiated the stop. (*Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883; see also *Adams v. Williams* (1972), 407 U.S. 143, 148, 32 L. Ed. 2d 612, 618, 92 S. Ct. 1921, 1924; *People v. Long* (1983), 99 Ill. 2d 219, 227-28, 457 N.E.2d 1252.) To be considered reasonable, an officer's inferences must be based on more substantial facts than would support a mere hunch. For the police to justify a temporary detention, they must point to specific, articulable facts which, when taken together

with natural inferences, make the intrusion reasonable. (*People v. Smithers* (1980), 83 Ill. 2d 430, 435-36, 415 N.E.2d 327, 331.) Facts and circumstances, which if viewed separately might constitute innocent behavior, may provide reasonable suspicion justifying a *Terry* stop when considered in their entirety. *United States v. Sokolow* (1989), 490 U.S. ___, ___, 104 L. Ed. 2d 1, 11-12, 109 S. Ct. 1581, 1586-87.

In the present case, we must consider all of the facts and circumstances known to the officer prior to his stopping the vehicle in which defendant was a passenger, and any reasonable inferences drawn therefrom, in determining the reasonableness of the stop. Such an inquiry necessarily includes the information supplied to Officer Gauer by the anonymous telephone informant.

■ This court, in a different factual context, recently addressed the propriety of a police officer's reliance on an informant's tip in conducting a *Terry* stop in *In re J.J.* (1989), 183 Ill. App. 3d 381, 384-85, 539 N.E.2d 764. In *In re J.J.*, we applied the reasoning of the United States Supreme Court in *Adams v. Williams* (1972), 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921. In *Adams,* the Supreme Court, recognizing that informants' tips vary greatly in their value and reliability, acknowledged that articulable suspicion for a stop may be based not only on an officer's personal observation but also on information supplied by another person. (*Adams,* 407 U.S. at 147, 32 L. Ed. 2d at 617, 92 S. Ct. at 1924.) The key determination in deciding whether a stop based on an informant's tip is reasonable is the reliability of the information. (*Adams,* 407 U.S. at 147, 32 L. Ed. 2d at 617-18, 92 S. Ct. at 1924.) Where some tips completely lacking in indicia of reliability would warrant either no police response or require further investigation before a stop would be justified, other situations, such as when a victim of a crime seeks immediate police aid and describes his assailant or when a credible informant warns of a specific impending crime, would justify the police making an appropriate response. (*Adams,* 407 U.S. at 147, 32 L. Ed. 2d at 617-18, 92 S. Ct. at 1924.) The fourth amendment does not require a police officer who lacks the precise level of information necessary to establish probable cause to simply shrug his shoulders and allow a crime to occur or a criminal to escape. *Adams,* 407 U.S. at 145, 32 L. Ed. 2d at 616, 92 S. Ct. at 1923.

■ In assessing the reasonableness of the stop in this case, we must necessarily consider the reliability of the information provided by the anonymous telephone caller. While it is true that Officer Gauer possessed certain information regarding the theft of wire and saw defendant and others loading what appeared to be wire in the trunk

of an automobile at his home a day after the theft, we do not perceive that information alone to be sufficient to justify Gauer's stopping of the vehicle. It is the information provided by the telephone caller which significantly contributes to Gauer's suspicion that certain persons at defendant's residence were involved in criminal activity. Thus, we first determine the reliability of that information.

Gauer received information from three separate telephone calls, all apparently made by the same person. While there is no direct connection between the informer and defendant, it is reasonable to infer that the informer had personal, or at least inside, information of the activities of the other persons involved. He was able to identify two of the individuals involved; he knew that the wire and other stolen property were stored at defendant's home; he knew about when it would be moved; and he also knew that defendant had been in jail and had been bonded out. Such detail indicates that the informer had at least some very close connection with or intimate knowledge regarding the imminent sale of wire and other stolen property.

More importantly, however, Officer Gauer did not stop the vehicle based only on the information provided by the informer. Rather, he took steps to corroborate what the informer told him about the wire and other stolen property. He went to the vicinity of where the informer indicated the wire was being stored and observed defendant loading boxes into the trunk of an automobile. One box was open, and the officer observed what appeared to be electrical wire protruding from it. Additionally, one of the three men loaded a wooden stick of electrical wire into the trunk. It is also important to consider that the informer's last call was at 11:30 a.m., and indicated that the wire would be moved from its location at defendant's home on Spencer Street within the next few hours. Officer Gauer observed defendant and his companions moving the wire at approximately 1:55 p.m. Because the officer corroborated many of the details provided by the informer and because the nature of the information provided was such that only someone with knowledge of the criminal activity could have provided it, we find it has the indicia of reliability necessary to provide a basis for Officer Gauer's articulable suspicion that the persons at defendant's home were about to transport stolen property.

■ In assessing the reasonableness of Officer Gauer's stop of the Oldsmobile, we are not limited to considering, however, only the information provided by the informer. Rather, we must consider all of the facts and circumstances in their entirety in determining whether Gauer had a reasonable suspicion justifying a *Terry* stop. See *Sokolow*, 490 U.S. at ___, 104 L. Ed. 2d at 11-12, 109 S. Ct. at 1586-87.

In addition to what the informer indicated, that wire and other stolen property were to be sold, Gauer also knew that numerous boxes and one spool of electrical wire had been taken in a recent local burglary. Not only that, but Gauer observed defendant and his companions loading boxes, at least one of which contained electrical wire, and a stick with electrical wire, into the trunk of the Oldsmobile. It was reasonable for Gauer to conclude that this wire might be the same wire stolen from the construction site as the theft was just one day previous; the wire was stolen from a location in the same city as defendant's residence; several boxes of wire were reported stolen; and defendant and the other two persons were observed carrying several boxes, one of which had wire protruding. These facts, although insufficient standing alone to justify stopping the vehicle, when viewed along with the information provided by the telephone tipster and considered with the reasonable inferences drawn therefrom, gave Gauer an articulable suspicion that the persons in the vehicle were involved in criminal activity which justified his stopping the vehicle for investigatory purposes.

■ We address next defendant's contention that Gauer lacked probable cause to arrest him even after the stop and the subsequent search of the Oldsmobile's trunk. A warrantless arrest is valid only if supported by probable cause. (Ill. Rev. Stat. 1987, ch. 38, par. 107—2(c); *People v. Montgomery* (1986), 112 Ill. 2d 517, 525, 494 N.E.2d 475.) Probable cause exists when the totality of the facts and circumstances known to the arresting officer is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime (*Montgomery*, 112 Ill. 2d at 525, 494 N.E.2d at 477), and it need not be based on evidence sufficient to convict. (*People v. Neal* (1985), 111 Ill. 2d 180, 193, 489 N.E.2d 845.) Whether probable cause exists is governed by commonsense considerations, and the calculation concerns the probability of criminal activity and not proof beyond a reasonable doubt. (*Montgomery*, 112 Ill. 2d at 525, 494 N.E.2d at 477-78.) The information relied upon to establish probable cause to arrest, however, must be supported by some indicia of reliability. *People v. James* (1987), 118 Ill. 2d 214, 222, 514 N.E.2d 998; *People v. Tisler* (1984), 103 Ill. 2d 226, 237, 469 N.E.2d 147.

■ If facts supplied by an informant's tip are essential to a finding of probable cause, the tip must meet standards of reliability before it can be considered in determining probable cause. (*Tisler*, 103 Ill. 2d at 237, 469 N.E.2d at 153.) Our supreme court has adopted the totality-of-the-circumstances test for probable cause to make a warrantless arrest set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 76

L. Ed. 2d 527, 103 S. Ct. 2317, based, in part, on information supplied by an anonymous informer. (*Tisler*, 103 Ill. 2d at 237-41, 469 N.E.2d at 152-55.) Accordingly, we will apply the *Gates* approach in determining whether Gauer had probable cause to arrest defendant. This necessarily involves reexamination of the informer's tips which we discussed in finding articulable circumstances to justify a *Terry* stop.

The Court in *Gates* began its analysis by noting that probable cause is a fluid concept depending on the assessment of probabilities in particular factual contexts and cannot be reduced usefully to a neat set of legal rules. (*Gates*, 462 U.S. at 232, 76 L. Ed. 2d at 544, 103 S. Ct. at 2329.) Informers' tips, like other evidence available to a police officer, vary greatly in their value and reliability and, as such, should not be assessed by a rigid set of rules. (*Gates*, 462 U.S. at 232, 76 L. Ed. 2d at 544, 103 S. Ct. at 2329.) Rather, a court should look to various indicia of reliability, in their totality, in assessing the overall reliability of an informer's tip. *Gates*, 462 U.S. at 232-34, 76 L. Ed. 2d at 544-45, 103 S. Ct. at 2329-30.

While concluding that an assessment of probable cause should be considered in light of the totality of the circumstances, the Court reiterated the need to consider such factors as the veracity, reliability, and basis of knowledge of the informer, along with any other indicia of reliability in determining the overall reliability of a tip. (*Gates*, 462 U.S. at 233, 76 L. Ed. 2d at 545, 103 S. Ct. at 2329.) Furthermore, the *Gates* Court emphasized the importance of corroboration of details of an informant's tip by independent police work. (*Gates*, 462 U.S. at 241-45, 76 L. Ed. 2d at 550-52, 103 S. Ct. at 2333-36.) We will, therefore, consider such factors, in their totality, in assessing the reliability of the informer's tip in this case.

■ Here, the nature of the information provided by the informer contained numerous details indicative of intimate and future actions of third parties ordinarily not easily predicted. (See *Gates*, 462 U.S. at 245, 76 L. Ed. 2d at 552, 103 S. Ct. at 2335-36.) The informer indicated that Randy Crest and someone named "Sid" had contacted him in an attempt to sell copper wire to raise money for defendant's bond, and that the informer had observed about 500 pounds of copper wire coated with black plastic. The informer further stated that Randy Crest was attempting to sell other stolen items stored in the basement of 60 South Spencer Street. The informer also knew that defendant had been arrested and had been bonded out. Additionally, the informer knew about when the wire would be moved from its Spencer Street location. We believe these facts indicate an intimate,

possibly firsthand, knowledge of criminal conduct which would not be known or readily ascertainable by the general public. Such intimate knowledge tends to support the reliability of the information and the informant.

We note that defendant argues that the information provided by the informer was not entirely accurate because Randy Crest was not one of the three men observed loading the boxes of wire into the Oldsmobile and because the informer had mentioned a green Ford LTD as a possible vehicle involved, but that no such vehicle was observed at the Spencer Street location. We are unpersuaded by this argument, however, as it is not necessary, in the context of a probable cause determination, that informers be infallible or that their information be perfect. (*Gates*, 462 U.S. at 245 n.14, 76 L. Ed. 2d at 553 n.14, 103 S. Ct. 2336 n.14.) It is only necessary that the overall content of an informer's tip be accurate.

Secondly, we emphasize that Gauer did not base his probable cause to arrest defendant entirely on the information provided by the informer. Rather, Gauer took investigative steps in attempting to corroborate the tip. On several occasions he drove by the 60 South Spencer Street location until he observed an Oldsmobile backed into the driveway of that location. He further observed three men, two who were known to him and one being defendant, loading boxes, at least one of which contained wire, into the trunk. He also saw the men place a wooden stick with electrical wire wrapped around it into the trunk. Additionally, he was aware that, as the informer had indicated, the wire was being moved within a couple of hours of his last call.

After completing his observations of the men loading the trunk, Gauer continued his efforts at corroboration by stopping the vehicle and obtaining consent to search the trunk. At that point, he ascertained that the boxes, two of which he had seen defendant carry and place in the trunk, did in fact contain No. 14 T.H.N.N. electrical wire, the type reported to have been taken in the burglary. It was at this point Gauer arrested defendant for possession of stolen property.

Gauer's investigation, conducted subsequent to the informer's calls, provided a substantial basis for crediting the information supplied by the caller and reduced the likelihood that the information was given recklessly or prevaricatingly. (See *Gates*, 462 U.S. at 244-45, 76 L. Ed. 2d at 552, 103 S. Ct. at 2335.) Thus, Gauer's reliance on the information provided by the caller in developing probable cause to arrest defendant was appropriate under these circumstances.

Gauer was not limited, however, in his assessment of probable

cause to the information provided by the telephone tipster. He also knew that numerous boxes and one spool of No. 14 T.H.N.N. electrical wire had been taken in a recent, local burglary. He also observed defendant taking wire from his home and loading it into the Oldsmobile, and he subsequently viewed the boxes of wire in the Oldsmobile which he could readily identify as wire of the same type taken in the burglary.

This additional information, combined with that provided by the informer, clearly gave Gauer probable cause to arrest defendant. Such facts and circumstances need not be sufficient to convict; rather, they need only establish the probability of criminal conduct. (*Montgomery*, 112 Ill. 2d at 525, 494 N.E.2d at 477-78.) It was reasonable based on the facts and circumstances known to Gauer, and the reasonable inferences to be drawn therefrom, that defendant was involved in the theft of the wire. The warrantless arrest of defendant at the scene of the stop following the search of the automobile trunk did not violate the fourth amendment.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG and McLAREN, JJ., concur.