570 N.E.2d 1202 (1991)
212 Ill. App.3d 195
156 Ill.Dec. 480
The PEOPLE of the State of Illinois, Plaintiff-Appellant,
v.
Sandra MILLER, Defendant-Appellee.
No. 2-90-0484.
Appellate Court of Illinois, Second District.
April 17, 1991.
As Amended on Denial of Rehearing May 17, 1991.
*1203 James E. Ryan, DuPage County State's Atty., Barbara A. Preiner, Supervisor of Appeals, DuPage Co. State's Atty's. Office, William L. Browers, Deputy Director, Lawrence M. Bauer, State's Attys. Appellate Prosecutor, Elgin, for people.
John P. Carbon, Jr., Addison, for Miller.
Justice McLAREN delivered the opinion of the court:
The State appeals pursuant to Supreme Court Rule 604(a)(1) (134 Ill.2d R. 604(a)(1)) from an order of the circuit court of Du Page County granting a motion to quash arrest and suppress evidence filed by defendant, *1204 Sandra Miller. The sole issue raised on appeal is whether the trial court erred in granting defendant's motion to quash and suppress because there was probable cause to arrest defendant.
Defendant was charged by indictment with the offense of unlawful possession of less than 15 grams of a substance containing cocaine (Ill.Rev.Stat.1987, ch. 56½, par. 1402(b).) Defendant filed a motion to quash her arrest, alleging that, at the time of the arrest, the police officer did not have probable cause to believe that a crime was committed. She also apparently requested that evidence connecting her with the crime be suppressed pursuant to the exclusionary rule, citing Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.
Robert James Nicholas, a police officer with the City of Elmhurst, was the only witness to testify at the hearing regarding defendant's motion. Nicholas testified that, on June 16, 1989, he was working a plainclothes detail with Officer Dominic Panico. He testified that they were in the parking lot where the Diplomat West banquet facility is located, observing the parking lot to make sure the lot was kept safe and secure. At approximately 9:05 p.m., while he and Panico were walking through the parking lot, Nicholas observed a vehicle in the lot with its dome light on. He saw that the two people in the vehicle had their heads down and that there were some rapid upper body movements. He stated that, based on his training and experience as a police officer, those movements indicated to him "that they could have either been cutting or ingesting cocaine or possibly even doing the same with marijuana." He and Panico continued walking toward the vehicle. Before they were able to reach the vehicle, Nicholas saw a man and woman exit the vehicle and enter the Diplomat West. The two people were later identified as defendant and Scott Swensen.
Approximately five minutes later, Nicholas observed Swensen and another woman come out of the Diplomat West and enter a different car. He and Panico walked up behind the vehicle, and he observed the dome light on. The two people's heads went down and there was some movement. Nicholas then walked up to the passenger side of the vehicle, and Panico approached the driver's side. Nicholas looked into the vehicle and saw that the person sitting in the driver's seat, later identified as Miss Parquette, was holding a snow seal in her hand. Nicholas testified that a snow seal is a little envelope used to package cocaine. He opened the snow seal, and there was a white, powdery substance inside.
Parquette and Swensen were each placed in the backseat of a different squad car. Nicholas spoke with Parquette, after advising her of her rights. Parquette told him that she had come from Oklahoma for a wedding. She stated that some friends had called her and asked her to bring cocaine with her, and she brought approximately 2½ grams of cocaine. She told Nicholas that she was in the process of selling cocaine to Swensen when the officers looked in the car.
Nicholas testified that Parquette also stated that, a day or two prior to the wedding, she had given defendant a snow seal containing cocaine. She told Nicholas that defendant had some cocaine on her and "it was the coke that she had given her." Parquette did not say where defendant had the cocaine, but "[s]he just said that she had it with her," that "[s]he had it with her that night."
Nicholas testified that he also spoke to Swensen, after Swensen was advised of his rights. Swensen told him that defendant was his girlfriend. Nicholas asked him if he and defendant had been "snorting" cocaine in Swensen's vehicle before entering the Diplomat West, and Swensen indicated that they had used cocaine at that time. Swensen also told Nicholas that defendant "had possessed the cocaine, or what was left of what they had used in the vehicle." Swensen did not say where defendant had the cocaine. Nicholas testified that "[h]e had just said that she had it on her. He wouldn't be specific."
Nicholas stated that he had never met Swensen or Parquette before and that they were never informants for him on any other drug transactions.
*1205 Nicholas testified that he then entered the Diplomat West. He asked one of the managers to find defendant in one of the banquet rooms because he "wanted to go inside and retrieve the cocaine that she had." Defendant came to the door with the manager, and Nicholas asked her to step outside. Nicholas explained to defendant that her boyfriend and Parquette had been arrested for possession of cocaine. Nicholas told defendant that Swensen had informed him that she had some cocaine on her and that Parquette told him that Parquette had given her some cocaine a couple of days before. He then told defendant that she was part of the investigation for the possession of the cocaine. He told defendant he would like her purse and removed the strap of her purse from her shoulder. He opened the purse and saw a snow seal in an open pouch. He then arrested her for unlawful possession of cocaine.
Nicholas specifically stated that he did not have a warrant and that defendant was not placed under arrest before he searched her purse. He stated that the search of the purse was part of his investigation. He also stated that he did not see any white powder on defendant's person and did not personally see her ingest any cocaine.
Following this testimony, defense counsel argued that there was no probable cause for the search because the statements of Swensen and Parquette lacked specificity and detail, noting that they did not say that contraband could be found in defendant's purse. The State argued that probable cause was established by the reliable statements of Swensen and Parquette which were corroborated by the officer's own observations of defendant in the car. The State referred to the "Ross case" which it noted was factually close to this case, but involved an anonymous tip and insufficient corroboration. A citation to Ross is not contained in the record. The trial judge summarized Nicholas' testimony and noted that the facts were very close to the facts in the "Ross case." The trial judge noted that defendant was not under arrest when searched. He then determined that the evidence was not sufficient to establish that Nicholas had probable cause to effectuate an arrest at the time defendant's purse was searched. He therefore granted defendant's motion. The State filed a motion to reconsider. The court denied the motion, noting that, as there was no exigency or emergency situation, there was sufficient time for either a search warrant or a warrant of arrest to be obtained. The State filed a certificate of impairment and a timely notice of appeal.
The State argues on appeal that defendant's motion should not have been granted because "the information that Officer Nicholas received from Swensen and Parquette stating that the defendant possessed cocaine, in conjunction with the officer's earlier observation of the defendant and Swensen, was sufficiently reliable to rise to the level of probable cause to detain the defendant, search her purse and arrest her for the possession of a controlled substance." The State contends that the reliability of the information provided was sound, as both Swensen and Parquette admitted direct involvement with the cocaine. The State relies on Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, People v. Tisler (1984), 103 Ill.2d 226, 82 Ill.Dec. 613, 469 N.E.2d 147, and People v. Stout (1985), 106 Ill.2d 77, 87 Ill.Dec. 521, 477 N.E.2d 498, as setting forth the standards applicable to a probable cause determination. The State has not cited the Ross case relied upon by the trial court in making its ruling. (People v. Ross (1985), 133 Ill.App.3d 66, 88 Ill.Dec. 260, 478 N.E.2d 575.) The State has also provided no citation to authority regarding the correct standard to be applied in this type of situation where the warrantless search occurred prior to the arrest.
Defendant has not filed a response brief in this case, so we examine this appeal pursuant to the standards set forth in First Capitol Mortgage Corp. v. Talandis Construction Corp. (1976), 63 Ill.2d 128, 345 N.E.2d 493. The Talandis court held that reversal should not be automatic when an appellee does not file a brief. The court stated that when "the record is simple and *1206 the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal." (Talandis, 63 Ill.2d at 133, 345 N.E.2d 493.) If the case is not simple, however, "a court of review should [not] be compelled to serve as an advocate for the appellee." (Talandis, 63 Ill.2d at 133, 345 N.E.2d 493.) On first blush, because of the muddled briefing by the State, the issues here appear complex. However, our independent research indicates that the issues raised can be simply resolved on their merits.
A reviewing court will not disturb a trial court's ruling on a motion to suppress unless it is manifestly erroneous. (People v. Adams (1989), 131 Ill.2d 387, 400, 137 Ill.Dec. 616, 546 N.E.2d 561.) However, with respect to a motion to suppress evidence, a defendant has the burden of proving that the search and seizure were unlawful. Ill.Rev.Stat.1989, ch. 38, par. 114-12(b); People v. Hoskins (1984), 101 Ill.2d 209, 212, 78 Ill.Dec. 107, 461 N.E.2d 941; People v. Perry (1990), 204 Ill.App.3d 782, 785, 150 Ill.Dec. 88, 562 N.E.2d 618.
The State is correct that the issue is whether probable cause to arrest defendant existed at the time defendant's purse was searched because, as long as there was probable cause for the arrest, the search is justified as a search incident to the arrest. A search incident to an arrest does not have to occur subsequent to the arrest but may be made immediately prior to the arrest (Rawlings v. Kentucky (1980), 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633, 645-46; People v. Rossi (1981), 102 Ill.App.3d 1069, 1072-73, 58 Ill. Dec. 291, 430 N.E.2d 233), so long as the fruits of the search were not necessary to support probable cause to arrest (Rawlings, 448 U.S. at 111 n. 6, 100 S.Ct. at 2564 n. 6, 65 L.Ed.2d at 646 n. 6; Rossi, 102 Ill.App.3d at 1073, 58 Ill.Dec. 291, 430 N.E.2d 233; see also 2 W. LaFave, Search & Seizure § 5.4(a), at 515-17 (2d ed. 1987)).
Section 108-1 of the Illinois Code of Criminal Procedure of 1963 (Code) provides:
"When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of:
(a) Protecting the officer from attack; or
(b) Preventing the person from escaping;
or
(c) Discovering the fruits of the crime; or
(d) Discovering any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of, an offense." Ill.Rev. Stat.1989, ch. 38, par. 108-1(1).
The question is, therefore, whether the arrest was lawful. Section 107-2 of the Code states:
"A peace officer may arrest a person when:
(a) He has a warrant commanding that such person be arrested; or
(b) He has reasonable grounds to believe that a warrant for the person's arrest has been issued in this State or in another jurisdiction; or
(c) He has reasonable grounds to believe that the person is committing or has committed an offense." Ill.Rev.Stat. 1989, ch. 38, par. 107-2(1).
Therefore, a warrantless arrest may be valid when a peace officer has reasonable grounds to believe that a person is committing or has committed an offense. (People v. Holveck (1990), 141 Ill.2d 84, 95, 152 Ill.Dec. 237, 565 N.E.2d 919.) The supreme court has held that the "reasonable grounds" standard is synonymous with "probable cause." (Holveck, 141 Ill.2d at 95, 152 Ill.Dec. 237, 565 N.E.2d 919.) Thus, if there was probable cause to arrest defendant at the time her purse was searched, the search of the purse was a valid search incident to the arrest.
In making a probable cause determination in cases involving an informant's tip, Illinois courts apply the totality-of-the-circumstances test of Illinois v. Gates (1983), 462 U.S. 213, 230-31, 103 S.Ct. 2317, 2328-29, 76 L.Ed.2d 527, 543-44, which the supreme *1207 court adopted in People v. Tisler (1984), 103 Ill.2d 226, 245-46, 82 Ill.Dec. 613, 469 N.E.2d 147. (People v. House (1990), 141 Ill.2d 323, 370, 152 Ill.Dec. 572, 566 N.E.2d 259.) Probable cause exists when the totality of the facts and circumstances known to the officer making the arrest is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime. (People v. Montgomery (1986), 112 Ill.2d 517, 525, 98 Ill.Dec. 353, 494 N.E.2d 475; People v. Crest (1989), 188 Ill.App.3d 768, 775, 136 Ill.Dec. 139, 544 N.E.2d 825.) Probable cause need not be based on evidence sufficient to convict (People v. Neal (1985), 111 Ill.2d 180, 193, 95 Ill.Dec. 283, 489 N.E.2d 845), and the calculation concerns the probability of criminal activity and not proof beyond a reasonable doubt. House, 141 Ill.2d at 370, 152 Ill.Dec. 572, 566 N.E.2d 259.
"In determining whether the officer had probable cause, the officer's factual knowledge, based on his prior law-enforcement experience, is relevant." (Tisler, 103 Ill.2d at 237, 82 Ill.Dec. 613, 469 N.E.2d 147.) Our supreme court has stated that "`[w]hen a police officer has proceeded without a warrant to search, seize evidence, or arrest a person, the trial court making a probable-cause determination is to apply standards at least as stringent as those that guide a magistrate in deciding whether to issue a warrant.'" (People v. Adams (1989), 131 Ill.2d 387, 398, 137 Ill. Dec. 616, 546 N.E.2d 561, quoting Tisler, 103 Ill.2d at 236, 82 Ill.Dec. 613, 469 N.E.2d 147.) The review must therefore center on the information that was available to the officer before the search or arrest. Adams, 131 Ill.2d at 398, 137 Ill.Dec. 616, 546 N.E.2d 561.
If facts supplied by an informant are essential to a finding of probable cause, the information supplied must meet standards of reliability before it can be considered in determining probable cause. (Tisler, 103 Ill.2d at 237, 82 Ill.Dec. 613, 469 N.E.2d 147.) "One indicia of reliability of information is found in admissions against the penal interests of the party giving the information. Courts and commentators have observed that admissions against penal interest may, by their very nature, possess inherent indicia of reliability." (People v. James (1987), 118 Ill.2d 214, 223, 113 Ill.Dec. 86, 514 N.E.2d 998, citing United States v. Harris (1971), 403 U.S. 573, 583-85, 91 S.Ct. 2075, 2082-83, 29 L.Ed.2d 723, 733-35, and 1 W. LaFave, Search & Seizure § 3.3(c), at 643-59 (2d ed. 1987); see also People v. Bell (1989), 191 Ill.App.3d 877, 883, 139 Ill.Dec. 12, 548 N.E.2d 397; People v. Paine (1988), 182 Ill.App.3d 812, 818, 132 Ill.Dec. 168, 539 N.E.2d 731.) The court in James noted that this type of situation is different from the scenario in cases such as Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, where the information came from an anonymous informer. In that type of case, an independent showing of reliability is required. (James, 118 Ill.2d at 223-24, 113 Ill.Dec. 86, 514 N.E.2d 998.) The court determined that, in some situations, uncorroborated statements by an arrestee can constitute probable cause for the arrest of a co-offender. James, 118 Ill.2d at 222, 113 Ill.Dec. 86, 514 N.E.2d 998.
The court in James then held that there was probable cause to arrest the defendant in that case based on information supplied by a co-offender which was supported by the independent verification of a substantial part of his statement by the facts learned through police investigation. (James, 118 Ill.2d at 225, 113 Ill.Dec. 86, 514 N.E.2d 998.) The court noted that the informer "admitted his own involvement in the crimes, something which common sense indicates one does not do lightly or falsely. Thus, the overall reliability of his statements is enhanced." (James, 118 Ill.2d at 224, 113 Ill.Dec. 86, 514 N.E.2d 998.) The court also noted that there was nothing in the record to indicate that the informer was offered any specific inducement or "deal" for identifying the accomplices. James, 118 Ill.2d at 224, 113 Ill.Dec. 86, 514 N.E.2d 998.
Similarly, the supreme court recently decided in People v. House (1990), 141 Ill.2d 323, 152 Ill.Dec. 572, 566 N.E.2d 259, that information supplied by a co-offender was sufficiently reliable to furnish probable cause to arrest the defendant for murder. (House, 141 Ill.2d at 369-70, 152 Ill.Dec. *1208 572, 566 N.E.2d 259.) The court again noted that the informer admitted his own involvement in the crimes, that the record did not reveal that he was offered any inducement for identifying his accomplices and that there was independent verification of a substantial part of his statement. House, 141 Ill.2d at 369-70, 152 Ill.Dec. 572, 566 N.E.2d 259.
In this case, both Swensen and Parquette made statements against their penal interest and also implicated defendant. We note that, in making its decision, the trial court accepted Nicholas' testimony and did not question Nicholas' credibility. Nicholas testified that Parquette stated that she gave defendant cocaine one or two days before and that defendant had cocaine on her that night. He also testified that Swensen stated that he and defendant had used cocaine earlier and that defendant still had the remainder of the cocaine in her possession. Swensen's statement was consistent with Nicholas' previous observation of defendant and Swensen in the car. Under these circumstances, although Parquette's and Swensen's statements lacked specificity and detail, the statements were sufficient to establish probable cause because both co-offenders gave consistent information which was corroborated, to some degree, by the police officer's prior observations. There was also no testimony presented indicating that either Swensen or Parquette was offered any inducement for giving information about defendant.
We also note that the case relied on by the trial court, People v. Ross (1985), 133 Ill.App.3d 66, 88 Ill.Dec. 260, 478 N.E.2d 575, is easily distinguishable. There are factual similarities, including the fact that both searches took place at the Diplomat West. However, in Ross, the police officers received information from an anonymous informant who stated that the defendant was selling cocaine at the Diplomat West. The informant described the defendant and provided a description of the defendant's car and license plate number. He stated that the defendant would get the cocaine from his car, put it in his jacket pockets and sell it in the reception area of the Diplomat West. Ross, 133 Ill.App.3d at 68-69, 88 Ill.Dec. 260, 478 N.E.2d 575.
The police officers located the defendant's car, determined that a wedding reception was being held at the Diplomat West, and then told the manager to find the defendant and bring him to the office. They did not observe the defendant to verify the information provided by the anonymous informant. The defendant was then searched and cocaine was found. Subsequently, he was arrested. The court in Ross specifically found that it was not a proper search incident to arrest because "the fruits of the search thus support and were the basis of probable cause to arrest." (Ross, 133 Ill.App.3d at 70, 88 Ill.Dec. 260, 478 N.E.2d 575.) The court also found that the search was not justified based on the existence of probable cause that evidence would be found in a search plus exigent circumstances. Ross, 133 Ill.App.3d at 70-73, 88 Ill.Dec. 260, 478 N.E.2d 575.
In this case, two co-offenders stated that defendant was in possession of cocaine. One of the co-offenders, Parquette, was in possession of cocaine at the time she was arrested and stated that she had given cocaine to defendant. The other co-offender, Swensen, stated that he and defendant had been using cocaine earlier and that defendant was in possession of the remainder of the cocaine. This was consistent with Nicholas' earlier observations. Under these circumstances, we find that there was probable cause to arrest defendant at the time her purse was searched and that the fruits of the search were not the basis of probable cause to arrest. Defendant did not meet her burden of proving that the search was unlawful.
For the foregoing reasons, the trial court's order granting defendant's motion to quash her arrest and suppress evidence was manifestly erroneous and is reversed.
The judgment of the circuit court of Du Page County is reversed, and this cause is remanded.
Reversed and remanded.
INGLIS and GEIGER, JJ., concur.