THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ANDREW PITTMAN, Defendant-Appellee.

Fourth District    No. 4—90—0801

Opinion filed July 18, 1991.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and John Anthony Palombi, both of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

The State appeals from an order granting defendant's motion to suppress evidence. Because we find that the search in question was appropriately conducted incident to an arrest, we reverse.

Defendant, Andrew Pittman, was present in the single-family dwelling located at 601 East Williams Street in Danville, Illinois, on April 12, 1990, when officers of the Danville Metropolitan Enforcement Group, armed with a search warrant, entered the premises. The search warrant authorized the search of Allan McKinney and the

premises of 601 East Williams Street. Before arriving at the residence, the officers had discussed procedures they intended to use regarding the large number of people they expected to find within the residence, and they decided to secure and handcuff anyone they found inside to avoid the use of weapons or the destruction of evidence. Upon entering the residence, the officers came upon eight people in the living room, one of whom was defendant. The officers ordered them to lie on the floor and handcuffed them as the house was secured. As the eight people in the living room were restrained, the officers noticed marijuana, as well as other drug paraphernalia, in plain view on a nearby coffee table.

Officer Larry Wilson of the Danville police department testified about the raid as follows:

"Q. [Defense attorney:] Now—and you have spoken of a search. In what manner or means was the search conducted with respect to each of the individuals?

A. Once everyone was secured and we knew the house was safe, I started to—I went by the front door; and we were trying to determine who was going to be placed under arrest and see how the investigation went. We saw drugs in open view at the time; so everyone remained on the floor until they were picked up by officers. I believe Officers Showers assisted me. He brought the individuals over to me if they were handcuffed. Then he let them go, searched them, and then I got proper identification for each individual in the house.

\* \* \*

Q. [State's Attorney:] You indicated that upon entry in plain view there were those drugs. Would you relate to the Court where they were and what you saw.

A. There was marijuana in plain view on a coffee table; paraphernalia laying [sic] around. Officer Showers also related that he saw a pillow put down on top of what we found to be later about an ounce of cocaine. When he saw it, it wasn't in open view; but the pillow he saw being placed over it at that time. He saw that.

Q. So at the time that you actually—you physically entered the residence you could see cocaine or one of the officers saw cocaine lying out that was later covered by an individual in the residence?

A. He saw the movement of the pillow covering something up as I understand it.

Q. Actually, you saw marijuana laying [*sic*] on the table out in the open where anyone could grab it?

A. Yes, but not on my immediate entry. After the house was secured, it was obvious that that stuff was out there.

Q. Now, when you say 'after the house was secured,' what do you mean by that?

A. Once the house—once everyone was placed on the floor and handcuffed and we knew that there was no one else in the house, everyone was instructed not to touch any evidence even though it was in plain view; and once the house was secured, officers were telling me what they were observing, and then I could also see the marijuana and paraphernalia in open view."

One by one, the individuals who were lying on the living room floor were released from their handcuffs and searched. A complete pat-down search was performed in addition to a search of every pocket. When defendant was searched, one of the officers recovered a bottle from one of defendant's pockets. The bottle was a very small brown glass bottle with a black plastic cap. There was a white residue inside the brown bottle. The bottle was confiscated by the officers, subsequently tested, and found to contain less than one gram of cocaine. As a result, defendant was indicted on the charge of unlawful possession of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b)).

Before trial, defendant filed a motion to suppress the bottle. After hearing testimony, the court granted the motion and stated the following:

"THE COURT: The Court, after reviewing the authority, finds that the Motion to Suppress should be allowed. This is a case under which these cases are controlling.

Clearly, under the search warrant, the officers were not legally entitled to search other occupants of the premises. There must, under the law, be an independent basis of probable cause to believe that this Defendant had committed or was committing an offense. The fact that he is present in a residence in which drugs are readily viewable and available does not support that finding under the case law.

Further, there is no articulated reason to believe that this Defendant, this particular Defendant, was armed and dangerous; so even if you are talking about a *Terry* type of frisk, we don't have that situation here.

Further, the evidence in this case is that it was a complete search. And that's not justified under the constitution. So the Motion will be allowed."

The State appeals from that order.

■ The trial court's decision on a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Fuentes* (1980), 91 Ill. App. 3d 71, 73, 414 N.E.2d 876, 879.) Defendant's argument, which the trial court accepted, was that his search was unlawful under the authority of *Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338. In response, the State argues to this court (as it did to the trial court) (1) that the search of defendant was a valid search incident to an arrest, and (2) that the police had probable cause to arrest defendant (and the other people present in the living room) based upon the close proximity to him of the illegal drugs and paraphernalia in the living room of the house. We agree with the State.

The issue in *Ybarra* was the extent to which police officers may search any person found on the premises being searched pursuant to a search warrant. (*Ybarra*, 444 U.S. at 87, 62 L. Ed. 2d at 243, 100 S. Ct. at 340.) As opposed to the present case, the Supreme Court in *Ybarra* noted that the "police *** had no reason to believe that [defendant] had committed, was committing, or was about to commit any offense under state or federal law." *Ybarra*, 444 U.S. at 91, 62 L. Ed. 2d at 245, 100 S. Ct. at 342.

■■ ■ To sustain a conviction for unlawful possession of cannabis, the State must prove the identity of the substance in question, that defendant had knowledge that the substance was present, and that he had actual or constructive possession of the substance. (*People v. Lenoir* (1984), 125 Ill. App. 3d 260, 264, 465 N.E.2d 1027, 1030.) Defendant argues that in order for the police to make an arrest for such a charge, they "must have probable cause to believe that the defendant had actual or constructive possession of the substance." We agree, but we find the evidence presented in this case to be sufficient.

"Probable cause exists when the totality of the facts and circumstances known to the officer making the arrest is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime. [Citations.] Probable cause need not be based on evidence sufficient to convict (*People v. Neal* (1985), 111 Ill. 2d 180, 193[, 489 N.E.2d 845, 849-50]), and the calculation concerns the probability of criminal activity and not proof beyond a reasonable doubt. [*People v.*] House [(1990)], 141 Ill. 2d [323,] 370[, 566 N.E.2d 259, 280]."

*People v. Miller* (1991), 212 Ill. App. 3d 195, 201, 570 N.E.2d 1202, 1207.

In *People v. Rentsch* (1988), 167 Ill. App. 3d 368, 370-71, 521 N.E.2d 213, 215-16, the court discussed the concept of "constructive possession" as follows:

> "Constructive possession ' "is that which exists without actual personal present dominion over a chattel, but with an intent and capability to maintain control and dominion." (*People v. Fox* (1962), 24 Ill. 2d 581, 585, 182 N.E.2d 692.)' [Citations.] *** Mere access by other persons to the area where drugs are found is insufficient to defeat a charge of constructive possession."

Based upon the authority of *Rentsch* (and the cases cited therein), the law regarding "constructive possession" may be stated as follows: If two or more persons share the immediate and exclusive control or share the intention and the power to exercise control over a thing, then each person has possession. When the facts in the present case are viewed in accordance with this standard, we find that the police had probable cause to arrest the eight people in the living room situated in close proximity to the coffee table upon which the marijuana was found.

■ Although we are reluctant to reverse a trial court's findings in regard to a motion to suppress, we note that the trial court never addressed in its findings whether the presence of the marijuana in close proximity to defendant was sufficient to provide probable cause to arrest defendant and to search him incident to his arrest, despite the prosecutor's argument on that very point.

Reversed and remanded for further proceedings.

GREEN and KNECHT, JJ., concur.