THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
RICKIE MILLENDER, Defendant-Appellee.

Fifth District    No. 5—85—0171

Opinion filed February 3, 1986.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Randy E. Blue and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Defendant, Rickie Millender, was charged in St. Clair County with forgery. On March 11, 1985, the trial court entered an order granting defendant's motion to suppress evidence and defendant's statement. The State appeals the granting of the motion to suppress the evidence seized at the time of the defendant's arrest and the defendant's subsequent confession.

The following evidence was presented at the preliminary hearing:

Defendant testified that on or around August 13, 1984, he was in the vicinity of the K mart store. He stated that he was talking with some other fellows when a man he knew to be a policeman came up to him, pulled a big pistol, and told him to "hold it." At that time defendant was wearing a gray jogging suit. He testified that the police officer kicked him, put handcuffs on him, threw him inside of a car, and took him to a Wal-Mart store. He stated that he was not taken inside the store, but there were people walking around the car. Defendant told the court that he was not shown an arrest warrant.

During cross-examination of defendant, it was learned that at the time of his arrest he was carrying a K mart bag. Inside the bag was a black hat and a black shirt. Defendant identified People's exhibit No. 2 as a pair of black pants which belonged to him and stated that he was wearing the black pants under the sweatsuit at the time he was arrested.

Mark Heffernan, a Belleville police department detective, also testified. He stated that on August 13, 1984, between 3 and 4 in the afternoon, he was at police headquarters. He heard over the radio dispatch that the district cars were looking for a black male, with a tall and husky build, wearing black shorts, black tank top and a black cap, in connection with a forgery that had occurred at Wal-Mart. When he arrived in the vicinity of the crime he observed defendant, whom he knew, standing by a chain link fence that separated the National Pride Carwash and the McDonald's Restaurant. Defendant was yelling at a car, asking for a ride. Detective Heffernan stated that he approached

the defendant, who was wearing a gray sweatshirt and sweatpants. Detective Heffernan stated that the reason why he approached defendant was that defendant, except for his clothing, fit the description he had been given.

Detective Heffernan stated that as he approached defendant, defendant reached inside the bag, at which time Detective Heffernan drew a service revolver and ordered defendant to halt. Detective Heffernan seized the bag, looked inside and saw a black shirt and black hat. On further investigation, the detective found that defendant was wearing black shorts under his sweat clothes. Detective Heffernan stated that he then arrested defendant and that he based the arrest on a number of factors, including the description he received over the radio dispatch, the time lapse involved, the obviously brand new clothes that defendant was wearing, and the black clothes that were found in the bag.

Detective Heffernan admitted during cross-examination that there was nothing illegal about having new clothes on, but he elaborated, stating it was not common for a person to go into a store, purchase new clothing, and then wear the new clothing home.

The detective also told the court that the shop clerk could not make a positive identification of defendant at that time. He further admitted that at the time defendant was brought to Wal-Mart, the circumstances of the offense had not been sorted out. They only knew that a man in black clothes had been with two other individuals who had been using credit cards that were not theirs. The detective held defendant because he believed him to be one of the suspects and had no information at that time that defendant had actually used the credit card. He further stated that he looked into the bag to make sure that there were no weapons.

The State then moved to admit the exhibits, but defendant objected. The court then denied the admission of the exhibits.

The trial court reasoned that no problems were created by the 25-minute delay between the original broadcast and the time when the detective observed defendant, by the fact that defendant was taken back to the Wal-Mart where the apparent offense occurred and had a confrontation with the individual cashier in the particular incident, or by the search of the bag. However, the court found that defendant did not fit the broadcasted description other than he was a husky, relatively tall black man. The fact that defendant was yelling to individuals in the car for a ride out of the area as the police officer testified would not assist the police in their identification because at that point defendant was not doing anything illegal. Thus the court determined that the

police officer did not have probable cause and granted the motion to suppress the evidence seized.

Next the court considered defendant's motion to suppress his confession. The State called Detective Michael Boyne. Detective Boyne related to the court his procedure for the interrogation of a suspect, which includes the giving of *Miranda* warnings. People's exhibit No. 3, the Belleville police department *Miranda* warning sheet, was then marked for identification. Detective Boyne stated that on the 14th day of August, 1984, he interviewed the defendant. He further testified that defendant said that he understood the warnings that he was being given and that defendant initialed the form. The detective stated that defendant read the form, understood it and signed it. The form among other things indicated that defendant was waiving his right to counsel and that the statement could be used against him in a subsequent trial. The detective stated that he did not threaten the defendant in any way nor did he promise him anything. Defendant made and signed a statement on August 14, 1984, that was marked People's exhibit No. 4.

On cross-examination, Detective Boyne stated that he did not see the defendant on August 13, 1984. He testified that Detective Heffernan was the detective in charge of this particular case. He further stated that during the time the defendant was being given his rights and the interview was commencing, the defendant asked to make a telephone call, which he was allowed to make. However, he did not remember at which point the defendant asked to make the phone call. He stated that he believed the defendant had been arrested the previous night and that it would have been normal procedure for the department to have allowed the individual to make a telephone call shortly after being taken into custody. Detective Boyne stated that he went to talk to the defendant that morning because he was working the day shift and Detective Heffernan was working the night shift. Boyne stated that he was aware at the time he talked to the defendant that the defendant had not signed the *Miranda* form when first spoken to by Detective Heffernan. Detective Boyne also stated that he assumed that when he was reading the defendant his *Miranda* warnings, if the defendant chose to assert that right he would tell him so. He stated that if the defendant had asked to see an attorney after being advised of all the rights, he would not have asked him any further questions. He stated that there were a number of reasons why a defendant would refuse to sign the admonition form without necessarily asserting his right to remain silent.

On redirect, Detective Boyne stated that the defendant told him that he would not talk to Detective Heffernan but would talk to him.

Detective Boyne stated that at no time during the interview did the defendant ask him if he could see an attorney.

People's exhibits Nos. 3 and 4 were admitted into evidence and then defendant testified. Defendant stated that on August 13, 1984, after he was arrested and taken to jail, he was shown a *Miranda* form by Detective Heffernan. He stated that he was given his rights. When he was asked if he wanted to remain silent, the defendant stated that he told the officer he wanted to make a telephone call. He then stated that Detective Heffernan told him he could not make a telephone call until he made a statement. Defendant stated that he told the officer that the reason he wanted to make a telephone call was to call a lawyer to see what the problem was with this offense. Defendant elaborated stating that the whole time he was at the jail he requested a telephone call so that he could get some help. He stated that he did not get to make a telephone call until after he made his statement with the detective who interviewed him on August 14. He stated that Detective Boyne told him he could not make a phone call until after he made a statement. Defendant stated he asked all the guards at the jail if he could make a phone call; he also banged on the wall several times and was told that if he did not stop knocking on the walls, they would come to the cell and kick him. He further stated that the jailer threatened to spray him with some type of gas in order to quiet him. Defendant stated that it was his impression throughout this incident that if he did not make a statement, he would not get to make a phone call. Also, there was no doubt in his mind that he had made it clear to Detective Heffernan that the reason he wanted to make a telephone call was to get himself a lawyer.

Upon cross-examination by the State, defendant stated that he knew Detective Heffernan and liked Detective Heffernan. Defendant denied ever telling anyone that he did not like Detective Heffernan. He also stated that he asked Detective Boyne if he could have a lawyer and if he could make a phone call, and the detective said no. He further told the court that Detective Boyne was lying when the officer told the court that the defendant never asked him if he could get an attorney.

The State on rebuttal called Detective Boyne, who reiterated that defendant never asked him for an attorney.

On surrebuttal, defendant called his wife to testify. Mrs. Millender stated that on August 13, 1984, she and her husband had made plans to go out for the evening. When defendant failed to return home, she began calling the hospital and the police station to see if defendant was there. She was told by the Belleville police department that her husband was not there. She testified that she called the police department

three or four times and these phone calls were made on the 13th after 3 or 4 p.m. She did not learn of defendant's whereabouts until he called her the next day. Mrs. Millender further stated that when she saw defendant the next day, she asked him why he did not call her and defendant told her they would not let him make a phone call.

The State proceeded to closing argument, as did defendant, and after closing argument the State moved to reopen the case so that they might call Detective Heffernan. The State wanted to "clear up" exactly what Detective Heffernan told the defendant. However, the State made no offer of proof as to how Detective Heffernan would testify. Defendant objected, and the court denied the State's request. The State filed a timely certificate of impairment and a notice of appeal.

The State first contends that the trial court's decision granting defendant's motion to suppress evidence because the officer lacked probable cause to stop the defendant was manifestly erroneous.

■ Generally, it is permissible for a police officer to make a warrantless arrest if he has probable cause to believe that the person arrested is committing or has committed a criminal offense. (*People v. Brown* (1980), 88 Ill. App. 3d 514, 520, 410 N.E.2d 505, 510.) Whether probable cause exists in a particular case depends on whether the totality of facts and circumstances known to the officers when the arrest is made are sufficient to warrant a man of reasonable caution to believe that the arrested person has committed a crime. (*People v. Tribett* (1981), 98 Ill. App. 3d 663, 670-71, 424 N.E.2d 688, 693.) In determining whether the arresting officer has probable cause, the courts must act upon the factual and practical consideration of everyday life upon which reasonable and prudent men, not legal technicians, act. (*People v. Moody* (1983), 94 Ill. 2d 1, 7-8, 445 N.E.2d 275, 278.) The law requires that only insofar as police officers are allowed the luxury of making mistakes and arresting a suspect, the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusion and probability.

■ After examining the facts of this case, we find that Detective Heffernan did indeed have probable cause to arrest the defendant and further find that the trial court's granting of the motion to dismiss was erroneous. Detective Heffernan had been informed via a radio dispatch that three persons, one of whom was a tall, husky, black male wearing black shorts, black tank top, and a black cap, had been involved in an illegal use of a credit card at Wal-Mart. The detective arrived in the geographic vicinity of where the offense was committed approximately 25 minutes after the offense was reported. After driving around the area, the detective noticed the defendant, a tall, husky, black man,

whom he knew, yelling for a ride out of the area at the McDonald's Restaurant. The man, except for his clothing, generally fit the physical description given to him. The man was clothed in a brand new gray sweatpants and sweatshirt and was carrying a bag from K mart. Because of the 25-minute time lapse, the detective believed that the man, identified as the defendant, could have been involved in the reported crime and obtained new clothing in the interim.

The detective testified that as he began to approach the defendant, he observed the man look at him and begin to reach into the bag. The detective instructed defendant to halt, realizing that defendant might be reaching for a weapon. The detective approached defendant, took the bag, and looked into it to ascertain if there was a weapon. Inside the bag the detective found a black cap and a black shirt. Shortly thereafter the detective found that defendant was wearing black shorts under the gray sweatpants. Defendant was then arrested. After viewing the total facts, we find that Detective Heffernan had cause to arrest defendant and that the trial court's decision was manifestly erroneous.

■ Finally, the State contends that the court's denial of the motion to reconsider its earlier order suppressing defendant's confession was erroneous.

The trial court had granted defendant's motion to suppress his confession after it determined that defendant had asked to exercise his right to an attorney and had been denied that right.

The State asserted in its motion to reconsider that if the State had been allowed to reopen the case, as requested, Detective Heffernan would have testified that on August 13, 1984, defendant did not request an attorney even after being given his *Miranda* warnings.

However, it well established that it is in the sound discretion of the trial court whether a case may be opened for further evidence, that this discretion will not be interfered with except where it is clearly abused, and that the burden is on the party seeking to reopen the case to show sufficient reason for doing so. (*People v. Shore* (1984), 129 Ill. App. 3d 443, 458, 472 N.E.2d 512, 521-22; *People v. Cross* (1968), 40 Ill. 2d 85, 90, 237 N.E.2d 437, 440, *cert. denied* (1968), 393 U.S. 221, 21 L. Ed. 2d 393, 89 S. Ct. 468.) We agree with the trial court that the State showed insufficient reason to reopen the case.

An examination of the defendant's testimony indicates that on August 13, 1984, while being questioned by Detective Heffernan, defendant asked to make a phone call in order to call an attorney. After defendant testified, the State called Detective Boyne in rebuttal. Boyne had previously stated that Detective Heffernan had questioned defendant on the 13th of August and that he did not question defendant until

the 14th of August. The State inexplicably chose not to call Detective Heffernan. Thus, there was no evidence to contradict defendant's statements that he had requested counsel on the 13th of August. After closing arguments, the State determined that it should have called Detective Heffernan and asked to reopen the evidence to call him. However, the State made no offer of proof as to how Detective Heffernan would testify. The State merely stated it wanted to call Detective Heffernan "so we can clear this all up." Defense counsel objected, and the court denied the request and granted defendant's motion to suppress the confession, finding it undisputed that defendant had asked to call an attorney when being examined by Heffernan.

■ From the aforementioned facts, we find that the trial court did not abuse its discretion by not opening the case for further evidence. The State did not meet its burden to show sufficient reason for doing so. We further find that the court did not abuse its discretion in denying the State's motion to reconsider. During the hearing, the State should have called Detective Heffernan to testify in rebuttal instead of Detective Boyne. At the very least, instead of waiting weeks before filing a motion to reconsider the State should have made an offer of proof at the hearing, telling the court how Detective Heffernan would testify.

■ The trial court rightly found it was undisputed that defendant had requested an attorney when being examined by Heffernan. The record is absent of any evidence that contradicts defendant's contention that he requested counsel on August 13, thus he should not have been subjected to any further interrogation until he received counsel. Once a defendant expresses his desire to deal with police only through counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless he validly waives his earlier request for the assistance of counsel. *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880; *Smith v. Illinois* (1984), 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490.

For the foregoing reasons, the denial of the State's motion to reconsider the order suppressing defendant's confession is affirmed, the granting of defendant's motion to suppress evidence is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

JONES and HARRISON, JJ., concur.