THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PIOTR RUTKOWSKI, Defendant-Appellant.

Second District   No. 85—0071

Opinion filed March 17, 1986.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Piotr Rutkowski, was convicted of murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1) and sentenced to a term of 22 years' imprisonment. Defendant appeals, contending the trial court erred in refusing his tendered instructions on voluntary manslaughter which were based upon an unreasonable belief defendant was defending himself.

The evidence at trial disclosed that defendant worked as a mechanic for the Electri-Flex Company in Roselle and decedent, Frederic Thode, was his foreman. On July 5, 1983, Thode had reported defendant to Donald Wolbing, the plant superintendent, for taking an unauthorized photograph of another employee, and the superintendent sent defendant home on a two-day suspension as a disciplinary action. Wolbing testified defendant was upset and nervous and stated he was going to kill Thode. Defendant left the plant, but returned an hour later to discuss the matter further, and a meeting was convened in the office of the plant superintendent attended by defendant, Wolbing, Thode and Fred Goddard, a shop employee.

Wolbing testified defendant seemed less nervous and upset at the beginning of the meeting, but did state "this will probably be the last time I see you." Defendant and Thode, and the other men, sat in the office and discussed the disciplinary problem calmly for about 20 minutes. Defendant explained he had taken the photograph in order to prove the other employee had been accorded special privileges; Thode told defendant the issue was that defendant had used a camera in the plant without authorization. Wolbing and Goddard both testified Thode had neither yelled at nor threatened defendant in any way, nor did Thode have anything in his hands.

At that point, defendant stood up and said to Thode, "This will probably be the last time I see you." He then produced his revolver from his pocket and fired four shots at Thode, killing him. Defendant ran from the office and turned himself in to the police an hour later.

Police officers testified defendant had an odor of alcohol on his breath but did not appear intoxicated. He made a statement to officers in which he, said "this should have never happened *** I told them I was going to kill Thode *** they should have listened to me."

Defendant testified in trial he had been having problems with

Thode at work and believed Thode was going to discharge him. Thode also made accusations against defendant and called him derogatory names. When sent home on July 5, defendant drank several beers and a bottle of vermouth, then took his gun and returned to the plant to talk to the owner. During the meeting in Wolbing's office, defendant stated, Thode jumped up, his eyes bulged and he looked as if he wanted to jump on defendant. Defendant testified that his hand, like a spring, reached into his pocket and took out the gun. He recalled pointing the gun, but everything turned yellow and he heard no shots and had no recollection of firing. Defendant testified he did not intend to kill Thode and his next memory was of being fingerprinted in the police station. Defendant also denied telling Wolbing he was going to kill Thode.

Dr. Roger Hatcher, a clinical psychologist, testified for the defense that he had examined defendant and diagnosed him as having a chronic depressive disorder and chronic alcohol dependence. It was Dr. Hatcher's opinion that defendant had a "disassociated reaction" at the time of the shooting at which time defendant was unable to form a conscious intent or be aware of what he was doing. The doctor noted defendant had a disoriented recall of what had occurred during the shooting and immediately afterwards, but did recall the automatic movement of his hands in bringing the gun out and also recalled that the victim was very threatening physically to defendant.

In rebuttal, the State called Dr. Alan J. Cunnien, who testified that from his examination he concluded defendant was not insane at the time of the offense as he could appreciate the criminality of his act and was able to conform his conduct to the requirements of the law. Defendant told Dr. Cunnien he thought Thode was trying to provoke him to get cause to fire defendant and defendant had considered hitting Thode over the head with a hammer. Defendant also related Thode had yelled at him in the meeting.

At the conference on instructions, defendant tendered instructions for voluntary manslaughter based upon an unreasonable belief in self-defense (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(b)) which the trial court refused on the grounds the instructions were not supported by the evidence. This is defendant's only claim of error on appeal.

Defendant contends that there was evidence in trial sufficient to justify voluntary manslaughter instructions, as he had testified decedent looked like he wanted to jump on defendant just prior to the shooting. He also looks to testimony by Dr. Hatcher that during the examination, defendant recalled decedent was very physically threatening prior to the shooting. The State responds these mere comments

in trial are too tenuous to form an adequate evidentiary basis to support giving of the instructions for manslaughter.

■■ ■ It is a general rule in murder cases that if there is credible evidence in the record which, if believed by a jury, would reduce the offense to manslaughter, instructions as to the lesser offense should be given. (*People v. Ward* (1984), 101 Ill. 2d 443, 451, 463 N.E.2d 696.) When any evidence is presented showing the defendant's subjective belief that use of force by him was necessary, a voluntary manslaughter instruction should be given. If the jury deems defendant's subjective belief was unreasonable, the result is voluntary manslaughter. (*People v. Lockett* (1980), 82 Ill. 2d 546, 552, 413 N.E.2d 378.) Manslaughter instructions should not be given, however, if there is no evidence which would reduce the offense to manslaughter. *People v. Ward* (1984), 101 Ill. 2d 443, 451, 463 N.E.2d 696; *People v. Bratcher* (1976), 63 Ill. 2d 534, 540, 349 N.E.2d 31.

■ Defendant relies solely upon his own testimony the victim "looked like he wanted to jump on him" and the testimony of the psychologist that defendant felt the victim was "very threatening physically" as evidence defendant believed that his use of the deadly force was necessary and justified. We conclude these vague, superficial comments by defendant are insufficient to give rise to a requirement that the tendered instructions for the lesser offense be given.

As defendant acknowledges in his brief, the witnesses to the shooting did not suggest any circumstances were present which might offer the possibility of self-defense. Defendant had stated earlier he was going to kill the victim and, after getting his gun, did so within the hour. Immediately prior to the shooting, the parties were seated in an office calmly discussing their differences. The victim was unarmed and, according to the witnesses, was not acting in any aggressive manner. Defendant's perception, according to his testimony in trial, that the victim looked like he wanted to jump on defendant cannot be considered sufficient, in these circumstances, to support an inference defendant then shot in self-defense. He did not, of course, testify that was why he did so, stating in trial only that his hand, like a spring, then went for his gun and everything turned yellow. Defendant's theory at trial was that he killed decedent during an episode of temporary insanity in which he was unable to form a conscious intent. See *People v. Stacey* (1962), 25 Ill. 2d 258, 268-69, 184 N.E.2d 866.

■■ While a defendant is entitled to the benefit of any defense shown by the evidence, there is a minimum standard to be met before instructions are required. (*People v. Baggett* (1983), 115 Ill. App. 3d 924, 931, 450 N.E.2d 913.) He is not permitted unlimited instructions

relating to possible theories of defense which are unrelated to the case and are based upon a mere factual reference or witness' comment. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 540-41, 349 N.E.2d 31; see *People v. Ward* (1984), 101 Ill. 2d 443, 451, 463 N.E.2d 696; *People v. Simpson* (1984), 129 Ill. App. 3d 822, 839, 473 N.E.2d 350.) The trial court here found there was no evidence justifying the manslaughter instructions tendered by defendant, and we cannot say that determination was manifestly erroneous.

■ Defendant also contends he was entitled to instructions on voluntary manslaughter because of his "abnormal mental condition" under the evidence he had emotional problems and was intoxicated at the time of the shooting. Defendant acknowledges that the jury rejected the insanity defense offered in trial, and does not contest that finding here, but urges this court to adopt the diminished responsibility defense noted as a minority view in "Comment Note—Mental or Emotional condition as Diminishing Responsibility for Crime," Annot., 22 A.L.R.3d 1228 (1968).

This issue was not raised in the trial court, nor were instructions tendered relating to the theory now urged. We consider it to be waived and will not discuss it further. *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027; *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

REINHARD and STROUSE, JJ., concur.