THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERT BELL, Defendant-Appellant.

First District (3rd Division)   No. 1—86—2921

Opinion filed November 22, 1989.

Mary Ellen Dienes, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Sharon L. Heath, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant-appellant, Albert Bell (Bell), was tried by a jury and found guilty of murder and armed robbery. He was sentenced to 40 years' imprisonment on the murder conviction. On appeal, Bell argues that the trial court erred in (1) refusing to quash his arrest where the evidence demonstrated that the police lacked probable cause to arrest him; (2) refusing to suppress his statements to law enforcement officers and the knife found on his person at the time of his arrest; (3) allowing the use of his codefendant's statement where the codefendant was unavailable for cross-examination by the defense; and (4) refusing to submit to the jury instructions on self-defense and voluntary manslaughter. We affirm.

On April 15, 1983, the police found Stanley Teer's body in an abandoned apartment building on West 60th Street in Chicago. Teer's death had been caused by multiple stab wounds. On April 15, the police arrested Curtis Bell, the defendant's brother, in connection with Teer's death. Based upon Curtis Bell's admissions, the police arrested Albert Bell on April 17, 1983. Defendant ultimately made a statement to the police implicating himself and his brother, Curtis, in Teer's murder.

Prior to trial, both Albert and Curtis Bell moved to suppress their statements. Curtis Bell testified that on April 15, 1983, after the police arrested him and read the *Miranda* warnings, he replied, in response to their questions, that he had nothing to say and requested the presence of a lawyer. The trial court found that the nonarresting officers who subsequently questioned and obtained statements from Curtis did so in violation of his *Miranda* rights. Therefore, the trial court granted Curtis' motion to suppress. In a separate appeal, this court affirmed that ruling.

In response to Albert Bell's motion to suppress, the State presented the testimony of Detectives Joseph Gandurski and Thomas J. O'Connor, and an assistant State's Attorney. According to the detectives, on April 17, 1983, they arrested Albert Bell on the street at 6009 South Honore and advised him of his *Miranda* rights in the police car and at police headquarters. Bell stated that he understood his

rights, did not invoke his right to remain silent and did not request counsel. Rather, Bell told the police various accounts of what transpired on April 17, 1983. During the hearing on his motion to suppress, however, Bell testified that on the day of his arrest he had ingested drugs and alcohol and was "high." Bell further testified that he was not advised of his *Miranda* rights, but was threatened by the officers with a chair.

The assistant State's Attorney testified that when he advised the defendant of his rights on the evening of April 17, 1983, he did not appear to be under the influence of drugs or alcohol or to have any comprehension difficulties. He did not request counsel, state that he had been threatened or express that he did not want to make a statement. The trial court found that there were no threats or coercion and no violation of defendant's *Miranda* rights.

In addition, the court denied defendant's motion to quash his arrest for lack of probable cause. In support of that motion, the defense called Detective O'Connor. O'Connor testified that he and Detective Gandurski arrested the defendant on the afternoon of April 17, 1983, without an arrest warrant after other police officers had informed him that Curtis Bell had indicated that he and Albert had participated in the robbery and murder of Teer.

After the court's denial of this motion, Bell argued *pro se* a second motion to quash arrest and suppress evidence, asserting that the arrest was the product of the unlawfully obtained statement of Curtis Bell. This motion was denied, subsequently argued by counsel and denied a second time.

The court granted the State's motion *in limine* precluding the defense from mentioning the disposition of Curtis Bell's case. In response to defendant's motion *in limine* to exclude Curtis Bell's statement, the court ruled that the State could not reveal the contents of any of Curtis Bell's conversations but did not prohibit the State from introducing evidence that conversations with Curtis Bell occurred or that the police showed defendant Curtis Bell's statement.

The trial consisted of the testimony of eight witnesses called by the State. The forensic pathologist testified that an autopsy revealed an abrasion to the left side of Teer's face, two stab wounds to his anterior chest, two incised wounds on the left side of his back, and two smaller wounds on his back. She was shown a knife and determined that the wounds could have been caused by such an instrument.

Teer's sister, Diane Smith, testified that when she saw Teer on April 9, 1983, he appeared happy because he had just received $500 in rental income.

Chicago police investigator Brian Lyons testified that on April 15, 1983, in response to a call, he went to an abandoned building located at 1639 West 60th Street in Chicago. In the first-floor bedroom he found a man's body, which was subsequently identified as Stanley Teer's. The deceased was wearing socks, no shoes, a shirt, sweater, and his pants' pockets were turned inside out. Lyons discovered a jacket near the body, but found no identification, money or weapon.

That evening, Lyons received information from an anonymous citizen implicating Curtis Bell in the crime. He and other officers arrested Curtis Bell.

On April 16, 1983, during his investigation of the Teer homicide, Detective Gandurski reviewed police reports and Curtis Bell's statement. Based upon the admissions therein, he and his partner, Detective O'Connor, conducted a surveillance for Albert Bell beginning on April 16, 1983. On April 17, 1983, the officers arrested Albert Bell and recovered a folding knife from his pocket. Detective Gandurski testified that he read Bell his *Miranda* rights in the police car. The police also recovered from the defendant's mother pants containing traces of blood that had been stuffed in a plastic bag. A Chicago police department microanalyst testified that the knife and pants contained traces of blood, but that due to the insufficient amount of blood present, she was unable to conduct further analysis.

Detective Gandurski further testified that at the police station he again read defendant his rights and that defendant gave several different statements to the police. Bell first offered an alibi statement, followed by a statement that he was acting in self-defense. After being confronted with the inconsistencies between his version and his brother's statement, Bell admitted to the detectives and Assistant State's Attorney Perry that he had participated in the robbery and murder of Teer.

Defendant related that he and his brother had observed a man on the street give another man money. Curtis suggested that they rob him, while defendant recommended that they first convince him to drink wine with them. The three men obtained liquor and went to an abandoned building on West 60th Street. In the building, Curtis put his hand in Teer's pocket, and Teer lunged at defendant with a knife. Defendant turned Teer's hand back, causing the knife to enter his chest. They fell to the floor, and defendant punctured Teer's chest a few additional times. After Teer fell, defendant dropped the knife, and Curtis took the money from Teer's pockets. Curtis gave defendant $200 and kept the remaining proceeds for himself. After they left the building, Curtis went back inside and later informed defendant that he

had stabbed Teer a few more times. He returned the knife to Bell and they separated.

Bell's final statement, essentially the same as the above statement, was transcribed and signed. Assistant State's Attorney Perry read this transcribed statement to the jury.

On appeal, defendant first argues that since the police arrested him without a warrant and without personal knowledge that he had committed a crime, the burden shifted to the State to demonstrate that the police had probable cause to arrest him. Defendant asserts that the State failed to meet this burden. We disagree.

Generally, it is permissible for a police officer to make a warrantless arrest if he has probable cause to believe that the person arrested is committing or has committed a criminal offense. (*People v. Millender* (1986), 140 Ill. App. 3d 504, 509, 488 N.E.2d 1105, 1109.) Probable cause for purposes of an arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been committed and that the person arrested has committed the offense. (*People v. Watson* (1986), 145 Ill. App. 3d 492, 498, 495 N.E.2d 1153, 1157.) Probable cause for an arrest may be established on the basis of all the information possessed by the officers working in concert. (*People v. Krogh* (1984), 123 Ill. App. 3d 220, 223-24, 462 N.E.2d 790, 793.) Specifically, an arresting officer may rely on the knowledge of officers working with him when making an arrest. (*People v. Crowell* (1981), 94 Ill. App. 3d 48, 50, 418 N.E.2d 477, 478.) Once a probable cause determination has been made by the trial court, a court of review will not disturb it absent manifest error. *People v. Matthews* (1985), 137 Ill. App. 3d 870, 874, 485 N.E.2d 403, 407.

Detective O'Connor testified that he had conversations with other police officers regarding the Teer homicide and, further, that he had been made aware that Curtis Bell had named defendant as a co-offender. Specifically, O'Connor's partner, Detective Gandurski, had reviewed the police reports and read Curtis Bell's statement. It is undisputed that an offense had been committed and, as previously stated, the arresting officer had knowledge that Curtis Bell had named his brother, Albert, as a co-offender. Under these circumstances, we find that there was probable cause to arrest Albert Bell.

Defendant argues that Curtis Bell, a co-offender, was not a reliable or trustworthy source to furnish probable cause for defendant's arrest. However, an arresting officer acting solely upon an accomplice's statement may have probable cause to arrest the co-offender. (*People v. Krohn* (1981), 100 Ill. App. 3d 37, 39, 426 N.E.2d 540, 541.)

The uncorroborated statements by an arrestee may constitute probable cause to arrest a co-offender if the information relied upon to establish probable cause is supported by some indicia of reliability. (*People v. James* (1987), 118 Ill. 2d 214, 222, 514 N.E.2d 998, 1001-02.) An arrestee's statement that is an admission against penal interests has some indicia of reliability. Here, the reliability of Curtis Bell's statement is further supported by the independent verification of his statement by the facts learned by the police during their investigation. The trial court found that Curtis Bell's statement corroborated in part by the police investigation provided probable cause to arrest Albert Bell. Judging that determination by the totality of the circumstances test, we do not find that the trial court erred. *People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998; *Illinois v. Gates* (1983), 462 U.S. 213, 230, 76 L. Ed. 2d 527, 543, 103 S. Ct. 2317, 2328.

In conjunction with this argument, defendant contends that since his arrest was made without probable cause, the knife and the statement obtained from him were admitted in error as the tainted fruits of the unlawful arrest. Since we found that the police had probable cause to arrest Albert Bell, we do not find that the knife and his statement were admitted in error.

Defendant further argues that his inculpating confessions and the knife must be suppressed because they were the direct and sole fruits of Curtis Bell's statement, which was suppressed after Curtis' right to remain silent was not scrupulously honored by the police. We disagree.

Generally, individuals not personally the victims of illegal government activity cannot assert the constitutional rights of others. (*United States v. Chiavola* (7th Cir. 1984), 744 F.2d 1271, 1273.) The victim of an illegal arrest has standing to seek suppression of the fruit of that arrest. While someone else may be aggrieved by the admission of the product of that illegal arrest, his personal privacy rights are not violated and he is not entitled to object to the use of the evidence against him. (*People v. James* (1987), 118 Ill. 2d 214, 226, 514 N.E.2d 998, 1003.) However, a violation of another person's fifth amendment rights may rise to the level of a violation of his rights to a fair trial if the government seeks a conviction through use of evidence obtained by extreme coercion or torture. Stated differently, the issue is whether the government's investigation methods resulted in a fundamentally unfair trial. *Chiavola*, 744 F.2d at 1273.

Curtis Bell's statement was not obtained by extreme coercion or torture. Albert Bell waived his right to remain silent and confessed his participation in the crimes. Accordingly, Albert Bell's statement and the knife need not have been suppressed as the illegal fruits of

Curtis Bell's arrest. We believe that the government's investigation methods did not result in an unfair trial.

Defendant maintains that reversible error occurred when the State repeatedly introduced into evidence the fact of Curtis Bell's hearsay statement. We disagree.

Curtis Bell did not testify at defendant's trial and therefore was not subject to cross-examination by the defendant. The content of the statement was not revealed to the jury, and we do not find that the State's isolated references to Curtis Bell's statement transformed him into a witness for the State. Curtis Bell's statement was not used for the truth of the matter asserted therein. Rather, it was referred to in order to explain how the police came to arrest Albert Bell and to establish the probable cause for that arrest. In addition, the statement was noted as the catalyst that prompted Albert Bell to alter his statement. *People v. Thomas* (1975), 25 Ill. App. 3d 88, 92, 322 N.E.2d 597, 600.

Assuming that the trier of fact interpreted the references to Curtis Bell's statement as establishing the truth of the matter asserted, that is, establishing that Albert Bell was the co-offender, under these circumstances, we do not find that this was clearly prejudicial hearsay evidence, constituting reversible error. (*People v. Boyd* (1980), 88 Ill. App. 3d 825, 410 N.E.2d 931.) We do not conclude that the defendant was denied a fair and impartial trial. (*People v. Simpson* (1976), 40 Ill. App. 3d 1059, 353 N.E.2d 91.) When properly admitted evidence of guilt is overwhelming, such as when the defendant has confessed to committing the crime and the prejudicial effect of the admission of the out-of-court statement is insignificant by comparison, the error is considered harmless error beyond a reasonable doubt. *Boyd*, 88 Ill. App. 3d at 843; *People v. Gibson* (1987), 156 Ill. App. 3d 459, 509 N.E.2d 563.

Defendant's final contention on appeal is that the trial court erred in refusing to give jury instructions on self-defense and voluntary manslaughter. We disagree.

The claim of self-defense is not available to a person who is attempting to commit, committing, or escaping after the commission of a forcible felony. (Ill. Rev. Stat. 1985, ch. 38, par. 7—4(a); *People v. Graves* (1985), 133 Ill. App. 3d 546, 549, 479 N.E.2d 10, 12.) Defendant argues that the crime against Teer constituted merely theft from the person, not a forcible felony. Robbery involves force or intimidation while theft is void of force or intimidation. (*People v. King* (1979), 67 Ill. App. 3d 754, 384 N.E.2d 1013, 1016.) If no force or threat of imminent use of force is used in the taking, there is no robbery. (*People v.*

*Patton* (1979), 76 Ill. 2d 45, 389 N.E.2d 1174, 1175.) We find that the defendant and his accomplice utilized intimidation and force, thereby committing robbery. Sufficient force to constitute robbery may be found when the article taken is so attached to the person or clothes as to create resistance, however slight. *People v. Taylor* (1989), 129 Ill. 2d 80, 84, 541 N.E.2d 677, 679.

The deceased was found with his pants' pockets turned inside out, and defendant admitted that his brother had put his hand in the victim's pocket. When force used is to prevent the resistance of the person robbed, such force makes the offense robbery. (*Taylor*, 129 Ill. 2d at 87.) Defendant and Curtis Bell utilized force to prevent Teer's resistance. Clearly, the power of the owner to retain possession of his goods was overcome by the robbers, and his money was so feloniously taken from his person with such violence as to occasion fatal injury. *Taylor*, 129 Ill. 2d at 87.

According to defendant, after Curtis Bell attempted to rob Teer, Teer produced a knife and pointed the knife towards defendant. Thereafter, defendant twisted Teer's arm back, stabbing him in the chest and Teer fell. Teer got up, approached defendant and defendant twisted his arm back, stabbing him again in the chest. After Teer fell, Curtis went through his pockets and removed his money. He gave Bell $200 and kept the remainder. Curtis and Albert left the building, Curtis went back, returned and informed Bell that the victim had arisen and that he stabbed him a few additional times. The evidence shows that Teer was stabbed numerous times in the chest, back and on the left side of his back. Under these circumstances, defendant's conduct was not justified by his need for the defense of his person.

A self-defense and a voluntary manslaughter instruction should be given when any evidence demonstrates the defendant's subjective belief that the use of force was necessary. (*People v. Lockett* (1980), 82 Ill. 2d 546, 552, 413 N.E.2d 378, 381.) The Criminal Code of 1961 provides in part that a person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing, but his belief is unreasonable. (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b).) There is, however, a minimum standard to be met before instructions are required. *People v. Rutkowski* (1986), 141 Ill. App. 3d 713, 716, 490 N.E.2d 1034, 1036.

■ We find that if defendant believed that force was necessary, he and his accomplice utilized far more force than necessary to defend themselves. In fact, according to defendant his brother returned to the scene and stabbed the victim an additional number of times. Under

these circumstances, particularly given the nature of the victim's wounds, the trial court's decision not to give a voluntary manslaughter or a self-defense instruction was correct. *People v. Mitchell* (1987), 163 Ill. App. 3d 58, 516 N.E.2d 500.

■■■ By finding the defendant guilty of robbery, the jury effectively precluded any possibility that defendant's use of force upon and murder of the victim was justified. Consequently, even if the trial court did err in not instructing the jury on the concept of justifiable use of force, this error did not deprive the defendant of a fair trial. *People v. Negron* (1979), 77 Ill. App. 3d 198, 206, 395 N.E.2d 1055, 1060-61; *People v. Goodman* (1981), 98 Ill. App. 3d 743, 748, 424 N.E.2d 663, 667.

Accordingly, the judgment and sentence of the trial court are affirmed.

Affirmed.

FREEMAN, P.J., and CERDA, J., concur.