THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN SMITH, Defendant-Appellant.

First District (1st Division) No. 1—90—1500

Opinion filed January 25, 1993.—Rehearing denied March 9, 1993.

Rita A. Fry, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Laura E. Forester, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

On April 6, 1988, defendant, Brian Smith, shot and killed Ronald Kucera, as defendant fled the scene of a home invasion and armed robbery in which he was one of four participants.

Kucera was the manager of an apartment building located at 5129 South Harper in Chicago. On the date of the incident, Tommy Gentry was in apartment 514 of the building, visiting with its occupants, Bruce Johnson and Larue Cooper. At 6:30 p.m., defendant and three cohorts gained entry to that fifth-floor apartment and, at gunpoint, robbed Gentry, Johnson and Cooper of both money and jewelry. Eventually, Cooper escaped from the apartment and ran hysterically to Kucera's ground-floor apartment, shouting "Ron, they are sticking my cousins up, they got guns, get your gun." Kucera called police and then instructed Cooper to remain in Kucera's apartment. At the same time, defendant and his colleagues had just descended the back stairway to the ground floor and were attempting to flee the building through the back door. Discovering that the door was locked, they began to go back upstairs. Kucera, with gun in hand, walked to the stairway and told them to "Hold it right there, you are going to wait for the police to get here, don't move." Defendant then reached for his gun, hidden in his waistband, and fired three shots at Kucera, striking him in the neck and chest. Defendant and his associates then fled the scene.

Eventually, defendant was apprehended, charged, and tried before a jury, which convicted him of the home invasion of both Cooper and Johnson, the armed robberies of Cooper, Johnson, and Gentry, and the murder of Kucera. Defendant was sentenced to concurrent terms of 20 years in the custody of the Department of Corrections for the armed robberies, in addition to a 60-year term for the murder, with the murder sentence to run consecutively to the armed robbery sentence. Defendant appeals both the convictions and sentence.

We affirm.

Defendant initially contends that the jury instructions in the present case improperly failed to indicate that a felon's right of self-defense is "reinstated after a complete withdrawal, followed by a new encounter initiated by the other person."

The State responds that defendant has waived this issue by failing to object to the omission at trial and by failing to include the issue in the post-trial motion. Indeed, the failure to object at trial to an error in jury instructions or the failure to raise the issue in the post-trial motion precludes argument of the issue on appeal. (*People v. Thur-*

*man* (1984), 104 Ill. 2d 326, 329, 472 N.E.2d 414; *People v. Berry* (1984), 99 Ill. 2d 499, 503, 460 N.E.2d 742.) Although this court, under the plain error doctrine, may excuse the waiver in a closely balanced case or to cure "substantial defects" (*People v. Sowinski* (1986), 148 Ill. App. 3d 231, 241-42, 498 N.E.2d 650; see also *People v. Lyons* (1967), 36 Ill. 2d 336, 223 N.E.2d 99), we do not believe that the present case warrants the application of the doctrine.

The circuit court, here, instructed the jury that

"[a] person is justified in the use of force when and to the extent that he reasonably believed that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force in [*sic*] necessary to prevent the imminent death or great bodily harm to himself."

The court further instructed the jury that

"[a] person is not justified in the use of force if he is escaping after the commission of a forcible felony."

■ The instructions given to the jury correctly stated the law in this area. A fleeing felon is afforded no right to self-defense in Illinois. (Ill. Rev. Stat. 1989, ch. 38, par. 7—4(a). See also *People v. Salazar* (1988), 126 Ill. 2d 424, 535 N.E.2d 766, *cert. denied* (1990), 497 U.S. 1051, 111 L. Ed. 2d 797, 110 S. Ct. 3288; *People v. Bell* (1989), 191 Ill. App. 3d 877, 548 N.E.2d 397, *appeal denied* (1990), 131 Ill. 2d 561, 553 N.E.2d 397; *People v. Gates* (1977), 47 Ill. App. 3d 109, 361 N.E.2d 809.) As noted in the Committee Comments to article 7 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 7—1 *et seq.*), the fleeing felon exception to self-defense does not permit the "right of retreat short of complete withdrawal such that the victim's subsequent use of force initiates a new conflict: if the situation is such that either the aggressor or the victim must suffer harm or even death, the victim clearly is the one entitled to such protection as the law affords." Ill. Ann. Stat., ch. 38, par. 7—4, Committee Comments—1961, at 402 (Smith-Hurd 1989).

Defendant, however, maintains that the jury might have concluded, legitimately, that defendant had withdrawn from the armed robbery because he had released Gentry and Johnson from the apartment and had left the fifth-floor apartment. We find this argument rather specious as the record clearly established that Johnson and Gentry escaped from the apartment only when a neighbor knocked on the door, asking if everything was all right. Johnson testified that, when defendant opened the door, Johnson rushed at it and pushed

Gentry into the apartment across the hallway. Defendant, therefore, did not "release" his captives in the manner he suggests on appeal. Moreover, after Gentry and Johnson made their escape, defendant and his cohorts attempted to flee from the building, and they encountered Kucera, to whom one of the robbery victims turned for help. Kucera told them to "hold it" and "wait" for the police to arrive. In response, defendant fired three shots at Kucera, two of which struck him. Clearly, defendant fired upon Kucera in an effort to facilitate his escape. Contrary to defendant's assertions, there was no evidence presented that Kucera fired at defendant first. A bystander who witnessed the shooting, Lewis Jackson, stated that he saw defendant fire three shots at Kucera. Jackson then heard a shot fired by Kucera, apparently taken in self-defense as he was struck.

The cases cited by defendant in support of his argument of a complete withdrawal are factually distinguishable from the present case and, as a result, are unpersuasive. In *People v. Forte* (1915), 269 Ill. 505, 110 N.E. 47, the defendant fired a shot at the victim and ran away. The victim, however, subsequently pursued the defendant and attempted to strangle her. This attempt to strangle, the court ruled, revived the defendant's right to defend herself. (*People v. Forte*, 269 Ill. at 512.) In *People v. Fort* (1970), 119 Ill. App. 2d 350, 256 N.E.2d 63, the reviewing court noted that the right to defend oneself does not permit the pursuit and the injuring of an aggressor after the aggressor "abandons the quarrel." (*People v. Fort*, 119 Ill. App. 2d at 355.) However, the court ruled that defendant was not entitled to the defense because the victim "gave up the fight and ran from the scene." (*People v. Fort*, 119 Ill. App. 2d at 355.) Furthermore, the court did not address the issue of jury instructions in *Fort*. Neither case contains a factual scenario similar to that presented here.

After carefully reviewing the record, we hold that defendant's conduct in fleeing from the armed robbery did not amount to the complete withdrawal contemplated by either the statute or the cases interpreting the statute. Accordingly, the instructions given to the jury here by the circuit court were proper.

■ Defendant next contends that the circuit court erred in refusing to instruct the jury on voluntary manslaughter.[1] Citing *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378, he argues that, by instructing the jury on justifiable use of force, the circuit court was obli-

---

[1]Defendant's brief utilizes the term "voluntary manslaughter." This is incorrect since, at the time of defendant's trial, the term "voluntary manslaughter" had been changed, by the legislature, to "second degree murder."

gated to give the instruction on voluntary manslaughter. The State argues that, because defendant was not entitled to the justified use of force instruction, he had no right to an instruction concerning unreasonable belief in the use of force. We agree.

During the instruction conference, defense counsel tendered instructions on second degree murder based upon unreasonable belief in justification, Illinois Pattern Jury Instructions, Criminal, Nos. 7.05A and 7.06A (2d ed. Supp. 1987) (hereinafter IPI Criminal 2d). The State objected that the instructions were "inappropriate to the facts" of the case, and the court refused to give them to the jury. The jury was given IPI Criminal 2d Nos. 24.06 and 25.06, the instructions regarding justifiable use of force.

IPI Criminal 2d Nos. 7.05A and 7.06A (Supp. 1987) are based on section 9—2(b) of the Criminal Code (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(b)), which covers second degree murder based upon an unreasonable belief in justification. Section 9—2(b) provides that a person is guilty of second degree murder when he intentionally or knowingly kills another under the unreasonable belief that the killing was justified under article 7 of the Code. Article 7, section 7—1, of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 7—1) states that a person is justified in the use of force intended to cause death or great bodily harm if he reasonably believes the force is necessary to prevent imminent death or great bodily harm. Justifiable use of force is a defense in a murder prosecution when the person's belief "is reasonable even if it is mistaken." (Ill. Ann. Stat., ch. 38, par. 7—1, Committee Comments, at 352 (Smith-Hurd 1989).) However, section 7—4(a) states that the "justification described in the preceding Sections of this Article [section 7—1] is not available to a person who *** is *** escaping after the commission of, a forcible felony." (Ill. Rev. Stat. 1989, ch. 38, par. 7—4(a).) This statutory language clearly establishes that defendant was not entitled to raise self-defense and, as a fleeing felon, could not use any of the justifications found in article 7 to fall within the purview of the second degree murder statute.

Defendant's misapprehension of the law concerning self-defense and its inapplicability to fleeing felons renders his reliance on *People v. Lockett* unpersuasive. There, the supreme court noted that a defense based upon self-defense does not preclude a voluntary manslaughter instruction in a murder prosecution. (*People v. Lockett*, 82 Ill. 2d at 550.) The court further reasoned if the evidence supports a self-defense instruction, it will also support a voluntary manslaughter instruction. (*People v. Lockett*, 82 Ill. 2d at 551.) However, the defendant in *Lockett* was not a fleeing felon. The victim and defendant had

gotten into a verbal argument, which escalated into a physical confrontation when defendant mistakenly thought the victim was pulling a gun on him. (*People v. Lockett*, 82 Ill. 2d at 549.) The facts in the present case implicate the fleeing felon exception to self-defense and bear little resemblance to the facts in *People v. Lockett*. The circuit court, therefore, did not err in refusing to instruct the jury on second degree murder.

■ Defendant next identifies as error the circuit court's denial of defense counsel's motion for a mistrial when the victim's widow broke down, sobbed, and screamed before the jury.

The record does not reflect an abuse of discretion on the part of the circuit court. When Mrs. Kucera became upset during the course of her testimony, the circuit court immediately allowed a recess, and a sidebar was conducted in which the following colloquy took place:

> "MR. HAAS [defense attorney]: The victim [*sic*] has been crying in front of the jury for several minutes, we move for a mistrial, it is unduly prejudicial.
>
> THE COURT: Clearly it has not been several minutes that she has been sobbing. At this time the motion for a mistrial is denied."

Defense counsel renewed his motion for a mistrial at the conclusion of the court's morning session:

> "MR. HAAS: We would just renew our motion for a mistrial based on demeanor and what Judy Kucera said, she was crying, she broke down throughout her testimony and at one point she was screaming.
>
> I think it was unduly prejudicial.
>
> THE COURT: State, response?
>
> MR. EPACH [assistant State's Attorney]: Judge Urso, you were here for that.
>
> THE COURT: Motion for mistrial denied.
>
> The Court does not believe it was unduly prejudicial."

A genuine, emotional outburst by a witness does not require a mistrial. (*People v. Hudson* (1970), 46 Ill. 2d 177, 263 N.E.2d 473; *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18.) The decision to order a mistrial is within the discretion of the trial court (*People v. Bolla* (1983), 114 Ill. App. 3d 442, 448 N.E.2d 996), and, upon review, that decision will not be reversed absent an abuse of discretion. (*People v. Chaffin* (1971), 49 Ill. 2d 356, 274 N.E.2d 68.) In the present case, the circuit court was in a superior position to determine the impact that the witness' crying may have had on the jury. Accord-

ingly, we find no abuse of discretion in refusing defendant's request to declare a mistrial.

■ Defendant next asserts that a "primary theme of the prosecution in this case was that the deceased was a good Samaritan" and that the prosecution also "drew attention" to his surviving family. These attempts operated, defendant argues, to deny him a fair trial because they were prejudicial and improper.

A review of the post-trial motion filed here reveals that this issue was not raised. As a result, defendant is precluded from arguing the issue on appeal. See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.

Moreover, the record does not demonstrate the need to excuse the waiver under the plain error doctrine. The armed robbery victim, Cooper, travelled from the fifth floor to the ground floor of the building to summon Kucera. The evidence presented by the prosecution, namely Kucera's concern and generosity toward his tenants, explained why Cooper would summon Kucera and not a neighbor closer in proximity to the scene of the armed robbery. Thus, the complained-of evidence appears to have provided the jury with some type of context for the events which took place on April 6, 1988. As such, the testimony was relevant and proper. Furthermore, any references to Kucera's family which were unnecessary were incidental and not dwelled upon. See *People v. Del Vecchio* (1989), 129 Ill. 2d 265, 544 N.E.2d 312, *cert. denied* (1990), 494 U.S. 1062, 108 L. Ed. 2d 779, 110 S. Ct. 1540.

■ Defendant also claims error resulting from certain comments made during the State's closing arguments. However, defendant failed to make contemporaneous objections to the comments he now cites in his brief, and his post-trial motion omitted specific reference to the remarks as is required. (See, *e.g., People v. Thomas* (1984), 121 Ill. App. 3d 883, 460 N.E.2d 402.) We find no reason to excuse the waiver under the limited plain error exception. See *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 238.

Defendant next contends that the circuit court considered improper factors in aggravation resulting in a sentence which is excessive. Defendant also asserts that the imposition of consecutive sentences was improper.

Sentencing is discretionary with the circuit court and will not be changed upon review absent an abuse of that discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.) The circuit court is pre-

sumed to have based the sentence on proper legal reasoning, and reviewing courts, in general, are reluctant to reduce a sentence that is within the applicable statutory guidelines. *People v. Lambrechts* (1977), 69 Ill. 2d 544, 372 N.E.2d 641.

■ We initially note that the sentence imposed in the present case falls within the applicable statutory guidelines. Defendant's 60-year sentence for murder is within the range prescribed by the Unified Code of Corrections. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1).) The 20-year concurrent terms imposed for the three armed robbery convictions are also consistent with the statutory limits. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3).) After noting the factors in mitigation and in aggravation, including defendant's prior criminal history, which the circuit court characterized as "significant," the court imposed consecutive terms, declaring that it was doing so to "protect the people of the State of Illinois from the conduct of the defendant." Such a finding is all the Unified Code of Corrections requires for the imposition of consecutive sentences. See Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(b) ("[t]he court shall not impose a consecutive sentence *** unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant").

■ Relying on *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138, defendant further alleges that the circuit court improperly considered the bodily harm to Kucera, a factor which is inherent in the crime of murder. A sentence based on improper factors, such as death as an aggravating factor when implicit in the offense, however, cannot be affirmed unless the reviewing court can determine, from the record, the weight placed on such an improperly considered aggravating factor. (*People v. Martin* (1988), 119 Ill. 2d 453, 519 N.E.2d 884.) This does not mean that the circuit court, when determining a sentence arising from a murder conviction, cannot consider the force employed or the the physical manner in which that death was brought about. (See *People v. Saldivar*, 113 Ill. 2d at 269-71.) Here, the court briefly stated at the outset of the sentencing that it was "aware" that defendant's conduct caused serious harm which resulted in the death of a fine man, whom the evidence had shown to be the type of individual who helped the people in his building. However, when stating for the record what factors it had taken into consideration in imposing sentence, the court made no mention of this factor:

> "I certainly took into consideration the age of the defendant and his prior history which was not—and I am talking about

personal history which was not one that anybody would want to be involved with but that does not change the facts, the seriousness of these offenses when the acts could have been completed but in this case in order not to get apprehended, this individual Mr. Smith took the life of another individual who was coming to the aid of the others would [*sic*] ask him for help after they were robbed and I feel it was appropriate."

Therefore, when read in their entirety and in context, the circuit court's remarks indicate that the passing reference to the harm caused was more a comment on the particular facts of the murder than an improper consideration of a factor implicit in the offense. Not every reference involving a factor implicit in an offense gives rise to reversible error. See *People v. Colclasure* (1990), 200 Ill. App. 3d 1038, 558 N.E.2d 705, *appeal denied* (1990), 133 Ill. 2d 562, 561 N.E.2d 697; *People v. Bennett* (1987), 159 Ill. App. 3d 172, 511 N.E.2d 1340, *appeal denied* (1987), 117 Ill. 2d 546, 517 N.E.2d 1088; *People v. Barney* (1982), 111 Ill. App. 3d 669, 444 N.E.2d 518.

Moreover, we note that, following the sentence hearing, defendant filed a motion to reconsider and reduce sentence. In this motion, defendant identified six reasons for reconsidering the sentence imposed. Although defendant failed to raise the issue now complained of here, the circuit court stated for the record that, in imposing the sentence, it had considered "all the information" that it had received as to defendant, including his background, employment history, and family circumstance. The court noted that defendant committed the murder while fleeing from an armed robbery, killing an individual who was coming to the aid of the armed robbery victims. The circuit court made no mention of the improper aggravating factor in summarizing its reasons for ordering the sentence previously imposed. Indeed, the court stated that it did not consider the sentence "as a vindication, or a sentence that would bring back, or punishment for the death of this person." After carefully reviewing the court's remarks at both the initial sentence hearing and the subsequent hearing on the motion to reconsider sentence, we hold that the reference to the improper factor was made only in passing and, in the context of imposing this sentence, carried little, if any, weight. Accordingly, the record does not reveal any abuse in sentencing discretion.

Defendant's convictions and sentences, therefore, are affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.